226 So.2d 302

**E. S. WEST, etc., et al.**

**v.**

**Alvin Ray GREEN et al.**

**6 Div. 304.**

Supreme Court of Alabama.

Aug. 14, 1969.

Rehearing Denied Sept. 11, 1969.

518

Mead, Norman & Fitzpatrick, Birmingham, for appellants.

Robert C. McKee and Corretti, Newsom & Rogers, Birmingham, for appellees.

COLEMAN, Justice.

The respondents appeal from a decree for complainants in a statutory suit to quiet title to a lot of land containing approximately three acres.

Complainants are Alvin Ray Green and his wife. They alleged and proved that they were in peaceable possession and that no suit was pending to test the validity of their title. They had purchased the property and lived on it in a trailer for approximately two years before suit was filed.

Respondents are Commercial Standard Insurance Company, a corporation (sometimes referred to as the insurer or as Commercial) and E. S. West as trustee for Commercial.

The record indicates that title to the property had been transferred as next set out.

In October, 1955, Carl Mays Knight and wife executed a mortgage conveying the property to Collateral Investment Company (hereafter referred to as Collateral) to secure a note for $11,350.00. On the same day, Collateral assigned the mortgage and note to Federal National Mortgage Association, herein referred to as Fannie Mae. Commercial insured the dwelling house on the property. The house burned May 8, 1963. On May 1, 1964, after the fire, in consideration for $10,162.47 paid by Commercial, Fannie Mae assigned the Knight note and mortgage to E. S. West as trustee for Commercial.

There appears to be agreement that the Knight mortgage is superior to the title of complainants if the transfer to Commercial is to be regarded as a purchase and not as payment of a loss due to the Hoveys under the insurance policy which Commercial had issued to them. Fannie Mae was named in the policy as mortgagee. The policy contains the following provisions:

"6. Mortgagee Clause—(This entire clause is void unless name of Mortgagee(s) (or Trustee(s)) is inserted in the Declarations): Loss or damage, if any, under this policy, shall be payable to the mortgagee (or trustee), named on the first page of this policy, as interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise this policy shall be null and void.

" .  .  .  .  .  .

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim."

" .  .  .  . If this Company shall claim that no liability ex-

"79 isted as to the mortgagor or owner, it shall, to the extent of pay-

"80 ment of loss to the mortgagee, be subrogated to all the mort-

"81 gagee's rights of recovery, but without impairing mortgagee's

"82 right to sue; or it may pay off the mortgage·debt and require

"83 an assignment thereof and of the mortgage. . . . . "

We do not notice any conveyance from the Knights other than the mortgage to Collateral, but apparently the Knights conveyed the property to the Morrises. The Morrises conveyed to Tommy D. Hovey and wife in May, 1959, and by terms of the deed, the Hoveys assumed and agreed to pay the Knight mortgage.

In February, 1962, the Hoveys executed a mortgage to Par Value Loan Company.

On February 27, 1963, Par Value foreclosed its mortgage and bought in the property.

It appears that by letter dated March 4, 1963, Par Value demanded that the Hoveys surrender possession, but the Hoveys did not do so and occupied the house until it burned May 8, 1963.

By deed dated June 3, 1963, Par Value conveyed the property to the complainants, Alvin Ray Green and his wife. The purchase price was $2,500.00. Complainants paid $500.00 and gave to Par Value a mortgage to secure the unpaid balance of $2,000.00.

It does not appear that the respondent insurer, Commercial, had notice that the Hoveys had executed the mortgage to Par Value or that the mortgage had been foreclosed.

It does appear that, prior to the fire, steps had been taken to foreclose the Knight mortgage but it was never foreclosed.

Commercial denied liability to the Hoveys but made payment to Fannie Mae in exchange for the Knight note and mortgage as already stated.

Respondents contend that under the insurance policy, the insurer was liable to the Hoveys under one contract and to the mortgagee under another contract arising out of the circumstances and the terms of the policy. It does appear that such a distinction has been recognized. See: Insurance Law and Practice, Appleman, 1941, Vol. 5, page 559, § 3401; and Continental Ins. Co. of New York v. Rotholz, 222 Ala. 574, 133 So. 587.

Respondents contend that the insured, the Hoveys, as mortgagors, breached the terms of the policy so that the policy became void as to the Hoveys and the insurer was relieved from all liability to them. Respondents contend, however, that the policy remained in full force and effect as to the mortgagee and that the insurer remained liable to the mortgagee although insurer was not liable to the mortgagors; and that the insurer purchased the Knight mortgage as provided in the policy and became subrogated to all the rights of the mortgagee under the Knight mortgage.

There does not appear to be any dispute between the parties to this suit as to the meaning of the policy and we will accept as correct respondents' proposition that the insurer was not liable to the mortgagors, the Hoveys, if they breached a policy provision which rendered the policy void as to them. The question in dispute is whether the Hoveys breached such a provision of the policy. The breaches insisted on by appellants are next discussed. The brief of appellants does not severally and clearly state the various grounds claimed to constitute a breach. We have, however, considered the grounds argued as we understand them.

1.

With respect to the insurer's right to be subrogated to the mortgagee's rights under the mortgage on the insured property, this court has said:

"We have also shown that to justify this right there must be, not only a claim that no liability exists as to the mortgagor or owner, but the insurer must allege and prove the facts which under the policy entitle it to such exemption from liability." Tarrant Land Co. v. Palmetto Fire Ins. Co., 220 Ala. 428, 431, 432, 125 So. 807, 810.

Respondents contend that the Hoveys breached a provision of the policy which recites:

" 'This *entire policy* shall be void, if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.' (Emphasis Supplied)"

Respondents say: "Investigation had shown that the insured wilfully attempted to defraud appellant by making false claims as to the property destroyed in the fire." The reference is to a list of articles of personal property which the wife, Pauline Hovey, signed and gave to the witness Moore who was representing the insured in investigating the fire. The list appears in the record as Respondents' Exhibit No. 11. The list is not sworn to. No sworn statement in proof of loss was ever received from the named insured, that is, the Hoveys.

The witness Moore investigated the fire. He examined the debris and hired a salvage company to make a more detailed examination by sifting through the ashes. His testimony is summarized in appellants' brief as follows:

" . . . . As a result of this examination, very little evidence was found of the remains of the items contained in the list of personal property claimed by the insured to have been lost in the fire. No sign was found of a television record player combination, of a dinette, no kitch-

en utensils except one spoon, very little remains of clothing items, such as buckles, and those other parts of clothing which should have remained. No shoe heels, no caster rollers from furniture, very few furniture screws or wood screws. The only items of which remains were found were a washing machine, a dryer and deep freeze, two refrigerators and a stove, all of which were several years old. Those were the only major items found and the rest of them, there was no trace of. (R. 110) He stated that in his experience normally with items such as listed by the named insured there were identifiable remains in the fire. In this examination, he drew the conclusion that the items claimed in the list were not in the house when the house burned, with the exceptions noted above. . . . . "

Respondents insist that the testimony with respect to the list prepared by Pauline Hovey shows that she had falsely represented the value of the articles burned in the fire; that such testimony is undisputed; and that it proves that the Hoveys breached the last quoted policy provision and requires a finding that insurer was not liable to the Hoveys. Two reasons oppose respondents' insistence.

First, the trier of fact was not bound to accept Moore's conclusion that the list given by Pauline Hovey was false. The credibility of the witness Moore was for the trial court to decide. The question was also for the court to decide whether Pauline Hovey had wilfully concealed or misrepresented a material fact concerning the subject of the insurance. Phoenix Insurance Co. v. Moog, 78 Ala. 284, 302. This court has said:

" . . . . The authorities seem to be very uniform to the effect, that the swearing such as is averred this policy required, and such as was made by the insured after the loss in proof of the value of the goods destroyed, in order to work an avoidance or forfeiture of the

insurance, must have been knowingly and wilfully done with a fraudulent purpose, and that a mere innocent mistake, or misstatement, or overvaluation, do not constitute a defense. (Citations Omitted)

" . . . . . . . . . .

"The burden of proof of fraud is on the insurer; who sets it up, and he will not be allowed by the form of his plea, to shift it. Of course, the question whether the facts show a willful and intentional misstatement of facts, made for the purpose of defrauding the insurance company, is one for the jury. 1 Bid. Ins., § 442." Tubb v. Liverpool & London & Globe Ins. Co., 106 Ala. 651, 658, 659, 17 So. 615, 616, 617.

Second, it was necessary for the court to find that the misrepresentations, if any, made by Pauline Hovey were so "extravagant as to lead to the conclusion that it was due not to a mistake in judgment but to an intention to defraud." See Hartford Fire Ins. Co. v. Clark, 258 Ala. 141, 151, 61 So.2d 19, 27, where the court says:

"But to preclude recovery because of fraud or false swearing in the proof of loss, the statement must relate to matter which is material. Hence a slight exaggeration of the amount of the value of the property destroyed will not defeat the claim entirely. To bar recovery, the overvaluation must be so extravagant as to lead to the conclusion that it was due not to a mistake in judgment but to an intention to defraud. 45 C.J.S. Insurance § 1021, page 1249, 1250; 29 Am.Jur. 851, section 1134; National Union Fire Ins. Co. v. Schwab, supra [241 Ala. 657, 4 So.2d 128]."

■ The court was not bound to find that the insured had breached the policy by false swearing or wilful misrepresentation and respondents' insistence in this respect is not sustained.

**2.**

Respondents argue that there was a breach of the following policy provision:

" . . . . Unless other-

"wise provided in writing added hereto this Company shall not

"be liable for loss occurring

"(a) while the hazard is increased by any means within

"the control or knowledge of the insured; . . . . "

Respondents insist that the hazard was increased and the policy breached because five payments were in arrears on the Knight mortgage, the Hoveys had executed the mortgage to Par Value and insurer was not informed thereof, the mortgage to Par Value had been foreclosed prior to the fire, demand had been made on the Hoveys to vacate the premises, and proceedings had been commenced to foreclose the Knight mortgage.

In Liverpool & London & Globe Ins. Co. v. Lavine, 5 Ala.App. 392, 397, 59 So. 336, with reference to such a hazard clause, the Court of Appeals said:

" . . . . we do not think the plain, ordinary meaning of the words used has reference to or includes such an increased risk as set up in the fourth plea (the risk set up in the fourth plea was that a mortgage, executed before the insurance policy was issued, was being foreclosed at the time the fire occurred), but refers rather in a general way to any physical condition that would make the risk more hazardous." (Par. Added)

■ The holding of the Court of Appeals, that such a clause refers to physical conditions, has stood for half a century without challenge so far as we are advised. We are not disposed to change it now. The matters here complained of as increasing the hazard are not changes in the physical condition of the insured house and did not breach the hazard clause.

### 3.

Respondents appear to argue that the Hoveys did not file any proof of loss, that the insurer did not waive the requirement requiring proof of loss, and therefore, for failure to file such proof, the insurer was not liable to the Hoveys. It does not appear that respondents have cited authority to sustain this argument.

Insurer's adjuster, Moore, requested the Hoveys to prepare a list of chattels which burned and they did so. The insurer denied liability to the owners, the Hoveys, and informed the mortgagee of such denial.

■ Respondents do not insist that liability to the owners was denied on the ground that the owners failed to furnish proof of loss to the insurer. Under the facts of this case, we are of opinion that the trial court could find that insurer's denial of liability to the owners constituted a waiver of the filing of proof of loss by the owners. Ray v. Fidelity-Pheonix Fire Ins. Co., 187 Ala. 91, 65 So. 536.

The foregoing is a discussion of the grounds relied on by respondents to show that the court erred in not finding that the owners had breached the policy. We think that respondents' contentions are not sustained by the record.

Respondents insist that the decree must be reversed for two other reasons.

### 4.

Respondents did not, in the trial court, make objection that the Hoveys are not made parties to this suit, but respondents now suggest that the Hoveys are necessary parties and that because of their absence the decree must be reversed, citing: Alabama Farm Bureau Mutual Cas. Ins. Co. v. Crestman, 277 Ala. 410, 171 So.2d 119; City of Mobile v. Gulf Development Co., 277 Ala. 431, 171 So.2d 247; and Denson v. Foote, 273 Ala. 470, 142 So.2d 877.

■ The subject matter of this suit is the title to the land involved. The Hoveys conveyed their title to Par Value by the mortgage executed in February, 1962. That mortgage was foreclosed in February, 1963. This suit was commenced April 8, 1965, which was more than two years after foreclosure. The foreclosure cut off the equity of redemption of the Hoveys. The passage of two years after foreclosure cut off their statutory right of redemption. Title 7, § 727. As far as this record discloses, the Hoveys had no material interest in the subject matter of the suit at the time it began, or thereafter, and are not necessary parties.

### 5.

Both parties, in their briefs, attack the opposite party for failure to set out averments of facts in their pleadings sufficient to entitle the pleader to relief. There is no assignment of error attacking the sufficiency of any pleader except Assignment 6.

In Assignment 6, respondents assert that the court erred in overruling their demurrer to the bill of complaint as last amended. Respondents insist that three grounds of demurrer were well taken. These grounds are: that the capacity in which complainants sue is not stated; that, from aught appearing, complainants are not sui juris; and that there is no introduction to the bill stating the names, ages, and residences of the parties.

As to the first ground, it is clear that complainants are suing in their own right as the individual owners of the land in suit. They aver that they are in "actual peaceable possession" of the land described "claiming to own said real estate" in their own right.

Respondents argue that the bill of complaint is silent as to the age and residence of the complainant wife. The original bill was filed by the husband alone as complainant. Prior to the amendment adding the wife as complainant, the bill recited:

"That your Complainant is over the age of twenty-one years and is a bona

fide resident citizen of Jefferson County, Alabama."

In open court, the husband made the wife a party by filing the following amendment:

"Come (sic) now the complainant with leave of the court first had and obtained and amends his bill of complaint by adding Virginia F. Green as a party complainant. The said complaint is further amended by making the word complainant plural throughout the bill of complaint and the verbs following the complainant plural instead of singular."

The court made the following statement:

"THE COURT: Let the record show that the Complainant, Alvin Ray Green, made request of the Court for leave to amend his bill of complaint by adding his wife, Virginia F. Green. The request or prayer of the Complainant is granted and the Respondent is not objecting and the bill of complaint is amended and the formal amendment is allowed as a part of the record, and is marked, filed in open court as of this date."

Counsel for respondents stated:

"MR. FITZPATRICK: I will interpose to the bill of complaint as amended all grounds of demurrer heretofore filed to the bill—the original bill of complaint and to the bill of complaint as last amended."

As we understand the bill and the quoted amendment, it is clearly alleged that the wife is over the age of twenty-one years and that her place of residence is Jefferson County.

■ While formal averments might have properly stated with greater clearness and particularity the name, age, and residence of the wife, these matters are alleged and Assignment 6 is not sustained.

Affirmed.

SIMPSON, HARWOOD, and BLOODWORTH, JJ., concur.