IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 5, 2008 Session

## U.S. BANK, N.A., as servicer for the TENNESSEE HOUSING DEVELOPMENT AGENCY v. TENNESSEE FARMERS MUTUAL INSURANCE COMPANY

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Gibson County**
**No. H3496, Clayburn Peeples, Judge**

_____

**No. W2006-02536-SC-R11-CV - Filed on January 29, 2009**

_____

The issue presented in this case is whether the commencement of foreclosure proceedings constitutes an increase in hazard for notice purposes under a standard mortgage clause in an insurance policy. The parties to this dispute are the bank that loaned funds to a homeowner for the purchase of a house and the insurance company that issued a personal fire and extended coverage insurance policy on the premises. After the homeowner became delinquent on her payments, the bank began foreclosure proceedings by notifying the homeowner of its intent to foreclose on the house. No notification of the foreclosure was given to the insurance company which insured the house against fire loss. Before the foreclosure process was complete, the homeowner filed for bankruptcy, which stayed the foreclosure proceedings. Thereafter, the house was destroyed by fire. The insurance company refused to pay the insurance proceeds to the bank on the theory that the commencement of foreclosure proceedings constituted an increase in hazard of which the bank was required to notify the insurance company under the policy. The bank filed suit against the insurance company for breach of contract, bad faith refusal to pay an insurance claim, and violation of the Tennessee Consumer Protection Act. The trial court granted partial summary judgment to the bank, concluding that the bank's failure to give the insurer notice of the foreclosure proceedings did not invalidate the insurance coverage. The Court of Appeals reversed, finding that the bank's initiation of foreclosure proceedings amounted to an increase in hazard under the policy and the bank's failure to provide notice precluded coverage. After careful review, we conclude that commencement of foreclosure proceedings does not constitute an increase in hazard under the terms of the insurance policy or the applicable statutory provisions, and therefore, no notice was required to be given to the insurance company. Accordingly, we reverse the judgment of the Court of Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed**

SHARON G. LEE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, GARY R. WADE, and WILLIAM C. KOCH, JR., JJ., joined.

Michael F. Rafferty, Memphis, Tennessee, for the appellant, U.S. Bank, N.A., as Servicer for the Tennessee Housing Development Agency.

Charles L. Trotter, Jr., Huntingdon, Tennessee, for the appellee, Tennessee Farmers Mutual Insurance Company.

Michael R. Campbell and Kathryn M. Russell, Chattanooga, Tennessee, for the Amicus Curiae, Property Casualty Insurers Association of America.

Daniel W. Small, Paul Allen England, and Timothy L. Amos, Nashville, Tennessee, for the Amicus Curiae, Tennessee Bankers Association.

Robert V. Redding, Jackson, Tennessee, for the Amicus Curiae, Mortgage Bankers Association.

## OPINION

## I. Background

This appeal arises out of a dispute between U.S. Bank, N.A. ("Bank"), and Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers"), regarding insurance coverage on a residence which burned while insured against fire loss by Tennessee Farmers. The Bank had a mortgage on the property and had taken steps to foreclose on the property before the fire loss. The parties' dispute centers on whether the Bank was required to give notice, pursuant to the terms of the policy, to Tennessee Farmers of the commencement of foreclosure proceedings for coverage of the fire loss.

On February 12, 1999, Jessica Robbins, who later married and was known as Jessica Hill ("the homeowner"), purchased a house in Humboldt, Tennessee. The Bank financed the home purchase and was designated as the mortgagee for purposes of insurance coverage. Tennessee Farmers issued the homeowner a personal fire and extended coverage insurance policy, which provided coverage for fire loss. The policy contained a standard mortgage clause, under which Tennessee Farmers agreed to protect the Bank's interest in the property, and also agreed that the protection afforded the Bank under the policy would not be lost due to acts of the insured homeowner, breach of warranty, increase in hazard, change of ownership, or foreclosure if the Bank had no knowledge of these conditions. In turn, the Bank was required to notify Tennessee Farmers of "any increase in hazard" of which the Bank had knowledge. The policy did not specifically require notification of foreclosure proceedings.

Beginning in August 2000, the homeowner fell behind on her mortgage payments to the Bank. On August 22, 2002, the Bank sent the homeowner a letter notifying her that foreclosure on her residence had started and that this fact had been reported to a credit agency. In a separate letter, also dated August 22, 2002, the Bank informed her that "[d]ue to the status of [her] account, it is necessary to initiate a foreclosure action. The account has been referred to our attorney to begin legal proceedings immediately." Thereafter, on September 5, 2002, the Bank's foreclosure attorney notified the homeowner by letter that her residence was soon to be foreclosed upon. The Bank's lawyer also requested a local newspaper to publish a notice of foreclosure sale. On September 26, 2002, the Bank notified the homeowner by letter that the foreclosure sale was scheduled to take place on November 5, 2002. On October 1, 2002, the homeowner and her husband filed for bankruptcy, which automatically stayed the foreclosure process.

At no point did the Bank notify Tennessee Farmers of the foreclosure proceedings. On April 12, 2003 – eight months after the Bank notified the homeowner that foreclosure proceedings were underway and over six months after the foreclosure was stayed by the bankruptcy filing – the insured residence was destroyed by a fire apparently caused by methamphetamine production.[1]

The Bank submitted a claim to Tennessee Farmers seeking to recover the insurance proceeds on the house. Tennessee Farmers refused to pay the claim, prompting the Bank to file suit against Tennessee Farmers on the grounds of breach of contract, bad faith refusal to pay an insurance claim, and unfair or deceptive practices under the Tennessee Consumer Protection Act. The Bank asserted in its complaint that Tennessee Code Annotated section 56-7-804 prohibited Tennessee Farmers from refusing to pay the Bank's claim based on the occurrence of a foreclosure. The Bank later filed a motion for partial summary judgment, arguing that although section 56-7-804 required the Bank to provide notice to Tennessee Farmers of any increase of hazard of which the Bank became aware, the statute did not require the Bank to notify Tennessee Farmers of the commencement of foreclosure proceedings. Tennessee Farmers also filed a motion for summary judgment arguing that section 56-7-804 had no application because its relationship with the Bank was governed by the insurance policy, which required the Bank to notify Tennessee Farmers of foreclosure proceedings as an increase in hazard. Tennessee Farmers maintained that the Bank's failure to provide such notice voided the Bank's coverage under the policy. Tennessee Farmers also sought summary judgment on the Bank's bad faith and consumer protection claims.

The trial court denied Tennessee Farmers' motion for summary judgment and granted the Bank's motion for partial summary judgment, concluding that the Bank's failure to give the insurer notice of the foreclosure proceedings did not invalidate the insurance coverage. The trial court's

---

[1] The homeowner testified that her husband produced methamphetamine, which he sold to pay their bills. She testified that the house "blew up" and that her husband was burned in the fire. A police officer who investigated the fire testified that he found equipment and chemicals at the scene used to manufacture methamphetamine. The record also contains a criminal judgment showing that the homeowner's husband pled guilty to manufacturing a controlled substance and reckless burning.

order was certified as a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure to enable Tennessee Farmers to appeal the notice issue. The Court of Appeals reversed the trial court, finding that the Bank's initiation of foreclosure proceedings constituted an increase in hazard under both the policy and the applicable statute, section 56-7-804, and that the Bank's failure to notify Tennessee Farmers of the foreclosure proceedings relieved Tennessee Farmers of its obligation to pay under the policy. We granted the Bank's application for permission to appeal to decide whether the commencement of foreclosure proceedings constitutes an increase in hazard for notice purposes under the terms of a standard mortgage clause in an insurance policy. For the reasons explained below, we hold that the commencement of foreclosure proceedings does not constitute an increase in hazard for notice purposes under a standard mortgage clause in an insurance policy or for purposes of section 56-7-804, and therefore, the Bank was not required to give notice to Tennessee Farmers of the commencement of foreclosure proceedings.

## II. Analysis

In our review of this case, we are guided by several well-established principles. First, issues relating to the scope of insurance coverage present questions of law. Standard Fire Ins. Co. v. Chester–O'Donley & Assocs., Inc., 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998). Questions regarding the interpretation of a statute and the statute's application to undisputed facts involve issues of law. Waldschmidt v. Reassure Am. Life Ins. Co., __ S.W.3d __, No. M2008-01133-SC-R23-CQ, 2008 WL 4966717, at *2 (Tenn. 2008). The present appeal involves the construction of both an insurance contract and a statute, and therefore, the applicable standard of review is de novo, affording no presumption of correctness to the legal conclusions reached by the courts below. Blair v. Brownson, 197 S.W.3d 681, 683 (Tenn. 2006).

When interpreting statutes, a reviewing court must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning. Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998). The courts must examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning of the words used. Id. Furthermore, every word in a statute is presumed to have meaning and purpose. Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ., 244 S.W.3d 302, 309 (Tenn. 2007). In short, "[t]he cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end." Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998).

Insurance contracts, being subject to the same rules of construction as contracts generally, should be interpreted and enforced as written. Standard Fire Ins. Co., 972 S.W.2d at 7. Absent fraud or mistake, the terms of a contract should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties. Christenberry v. Tipton, 160 S.W.3d 487, 494 (Tenn. 2005).

We first review the terms of the insurance policy and then the applicable statutory provisions to determine whether notice to Tennessee Farmers was required for coverage.

## A. Insurance Policy Provisions

There are two types of insurance policy provisions designed to protect the interests of a lienholder such as the Bank – the simple/open clause and the standard/union clause. The first provision, known as a "simple/open clause," provides that the lienholder's rights are no greater than the insured borrower's rights. Reeves v. Granite State Ins. Co., 36 S.W.3d 58, 60 (Tenn. 2001). In other words, a simple/open clause merely identifies the person or entity entitled to collect the insurance proceeds in the event of a covered loss. Anderson v. Ky. Growers Ins. Co., 105 S.W.3d 462, 465 (Ky. Ct. App. 2003); Nationwide Mut. Ins. Co. v. Hunt, 488 S.E.2d 339, 341 (S.C. 1997). The generally accepted view is that under a simple/open clause, the rights of the lienholder are "wholly derivative, and cannot exceed those of the [insured]." Green v. Fid.-Phenix Fire Ins. Co., 64 S.E.2d 162, 166 (N.C. 1951). Thus, the lienholder stands in the insured's shoes and is subject to the same defenses that may be raised against the insured by the insurance company. Indep. Fire Ins. Co. v. NCNB Nat'l Bank, 517 So. 2d 59, 62-63 (Fla. Dist. Ct. App. 1987); Hunt, 488 S.E.2d at 341. Consequently, if the insured borrower does something to invalidate the policy, such as commit fraud or intentionally damage the property, the lienholder has no rights under the policy. See Cent. Nat'l Ins. Co. of Omaha v. Mfrs. Acceptance Corp., 544 S.W.2d 362, 364 (Tenn. 1976) (observing that acts of the insured which invalidate the policy defeat the loss payee's rights along with the rights of the insured). Under a simple/open clause, the acts of the insured borrower are highly relevant, as those acts directly affect the rights of both borrower and lienholder. Clauses of this type have been in use in Tennessee for more than a century. See Hocking v. Va. Fire & Marine Ins. Co., 42 S.W. 451, 451 (Tenn. 1897) (concluding that the insured's act of burning the insured property extinguishes the policy rights of both the insured and the loss payee).

The second type of insurance clause designed to protect the interests of a lienholder is known as a "standard mortgage" or "standard/union" clause. Courts uniformly hold that, under a standard mortgage clause, coverage is provided for the lienholder regardless of the actions of the insured borrower. Ingersoll-Rand Fin. Corp. v. Employers Ins. of Wausau, 771 F.2d 910, 913 (5th Cir. 1985); see also D. E. Evins, Annotation, Fraud, False Swearing, or Other Misconduct of Insured as Affecting Right of Innocent Mortgagee or Loss Payee to Recover on Property Insurance, 24 A.L.R. 3d 435 (1969). Thus, the lienholder "will be paid for a covered loss notwithstanding the insurer's right to deny the named insured's claim based upon the named insured's acts or noncompliance with the policy's terms." Iron Horse Auto v. Lititz Mut. Ins. Co., 156 P.3d 1221, 1224 (Kan. 2007).

The primary function of a standard mortgage clause is "to furnish to the [lienholder] a reliable security in a definite sum free from any interference on the part of the [insured borrower] which would, to any extent, invalidate or make less adequate that security." Laurenzi v. Atlas Ins. Co., 176 S.W. 1022, 1026 (Tenn. 1915). "To accomplish this purpose, specific language is included

in the [policy] to prevent the policy from being invalidated by the insured's acts or neglect." Reeves, 36 S.W.3d at 61. Accordingly, most jurisdictions addressing the question recognize that a standard mortgage clause creates a separate contract between the insurer and the lienholder, conferring greater protection to the lienholder than the insured has in the underlying policy. See, e.g., Indep. Fire Ins. Co., 517 So. 2d at 63; Iron Horse Auto, 156 P.3d at 1224; Anderson, 105 S.W.3d at 465-66; May v. Market Ins. Co., 387 So. 2d 1081, 1084 (La. 1980); Foremost Ins. Co. v. Allstate Ins. Co, 486 N.W.2d 600, 602-03 (Mich. 1992); Weems v. Am. Sec. Ins. Co., 450 So. 2d 431, 436 (Miss. 1984); Nationwide Mut. Ins. Co. v. Dempsey, 495 S.E.2d 914, 915 (N.C. Ct. App. 1998); Hunt, 488 S.E.2d at 343. Tennessee is among those jurisdictions recognizing that the "chief distinction between the two types of clauses is that the standard/union clause establishes a contract between the insurer and loss payee" which cannot be invalidated by the actions of the insured borrower. Reeves, 36 S.W.3d at 61; see also Phoenix Mut. Life Ins. Co. ex rel. First Nat'l Bank of Lawrenceburg v. Aetna Ins. Co., 59 S.W.2d 517, 518 (Tenn. 1933) ("[T]he effect of the mortgage clause was to create a separate and distinct contract between the mortgagee and the insurance company."); Third Nat'l Co. v. Thompson, 191 S.W.2d 190, 193 (Tenn. Ct. App. 1945) ("It has been settled in this state that [a standard] mortgage clause is . . . a separate and independent contract between the insurer and the mortgagee [and] that the latter's rights cannot be invalidated by any act or neglect of the mortgagor.").

The insurance policy at issue in this case contains a standard mortgage clause. The policy provides that Tennessee Farmers will "protect the [Bank's] interest in the insured building. This protection will not be invalidated by any act or neglect of any insured person, breach of warranty, increase in hazard, change of ownership, or foreclosure if the [Bank] has no knowledge of these conditions." For its part, the Bank was required to "notify [Tennessee Farmers] of any change of ownership or occupancy or any increase in hazard of which the [Bank] has knowledge." Our task is to interpret the policy language and determine whether this language required the Bank to notify Tennessee Farmers of the commencement of foreclosure proceedings. The precise issue before us is whether the commencement of foreclosure proceedings constitutes an "increase in hazard" which the Bank must report to the insurer or risk invalidation of the policy. As noted above, it is undisputed that the Bank began, but did not complete, foreclosure proceedings on the insured's residence; that Tennessee Farmers was not notified of the institution of those proceedings; and that the insurance policy requires notification of any increase in hazard, but does not specifically require notification of foreclosure proceedings.

Although no Tennessee case has squarely addressed the precise issue presented, the ruling in S. Ins. Co. v. Estes, 62 S.W. 149 (Tenn. 1901), is instructive. In Estes, the insurance policy contained a clause stating that the policy would become void "if the interest of the insured be other than unconditional or sole ownership, . . . or if, with knowledge of the insured, foreclosure proceedings be commenced." Id. at 150. There was a mortgage on the property, and foreclosure proceedings were instituted against the insured property. Neither the existence of the mortgage nor the filing of a bill in chancery court to foreclose on the lien were disclosed to the insurer. The property was then destroyed by fire due to no fault of the insured. The insurer asserted that the policy was voided by the failure to disclose the existence of the lien and the initiation of foreclosure

proceedings. The Court ruled that neither the existence of the undisclosed mortgage nor notice of foreclosure invalidated the insurance coverage. The Court reasoned that foreclosure proceedings were the remedy of the mortgagee for nonpayment of the debt and the remedy is an "incident of the mortgage . . . [and] . . . a result that is brought about by the existence of the mortgage." Id. at 151. Since the initiation of foreclosure proceedings did not necessarily affect the insurer's risk, the Court reasoned that the commencement of foreclosure proceedings did not warrant invalidating the insurance coverage.

Our review of cases from other jurisdictions reveals that courts have reached a similar conclusion on the issue of whether the commencement of foreclosure proceedings constitutes an increase in hazard for purposes of a standard mortgage clause. In an Indiana case, for example, the insurance policy contained a provision requiring the lienholder to notify the insurance company of "any . . . increase of hazard which shall come to his knowledge." Phenix Ins. Co. of Brooklyn, N.Y. v. Union Mut. Life Ins. Co. of Me., 101 Ind. 392, 395 (1885). After the insured property was destroyed by fire, the insurance company argued that the commencement of foreclosure proceedings by the lienholder prior to the fire "so greatly increased the risk of loss by fire to the property insured, as necessarily to avoid the contract of insurance." Id. The Supreme Court of Indiana rejected this argument, holding that the "courts can not assume that the mere commencement of the foreclosure proceedings, of itself, increased the hazard of the risk . . . to such an extent as would, in the absence of notice or consent, avoid the contract of insurance." Id. at 396. The Indiana Supreme Court explained that if the insurance company had "desired to be notified of the commencement of foreclosure proceedings, or had supposed that the mere commencement of such proceedings would increase the hazard of the risk, it would have stipulated for such notice in direct terms." Id. at 395-96.

In similar cases involving standard mortgage clauses requiring notice of an "increase of hazard," courts have found that the plain meaning of those words do not include an event such as a foreclosure proceeding, but rather, refer to physical conditions on the insured property posing a more hazardous risk to the property. See, e.g., West v. Green, 226 So. 2d 302, 307 (Ala. 1969); Allen v. Houston Fire & Cas. Ins. Co., 243 So. 2d 905, 910 (La. Ct. App. 1971); see also Trs. of Schs. v. St. Paul Fire & Marine Ins. Co., 129 N.E. 567, 569 (Ill. 1920) (holding that foreclosure did not increase the hazard for purposes of providing notice); Anderson, 105 S.W.3d at 466 (holding that foreclosure proceedings do not constitute a "substantial change in risk"). Commentators on insurance law have likewise observed that the "foreclosure of a mortgage on the insured premises is not such an increase of hazard as requires notice to the insurer." 6A Lee R. Russ and Thomas F. Segalla, Couch on Insurance § 94:21 (3d ed. 2008).

Courts have reached a different result where policy language specifically provides that foreclosure proceedings void the policy or require notification of the proceedings. In such cases, courts have held that the commencement of foreclosure proceedings does constitute an increase in hazard. Neil Bros. Grain Co. v. Hartford Fire Ins. Co., 1 F.2d 904, 905, 907-08 (9th Cir. 1924)

(noting policy language that policy "shall be void if . . . with the knowledge of the insured, foreclosure proceedings be commenced"); Peterson v. Hudson Ins. Co., 15 P.2d 249, 250-52 (Ariz. 1932) (noting policy language that policy "shall become void if . . . with the knowledge of the insured, foreclosure proceedings shall be commenced"); Newark Fire Ins. Co. v. Pruett, 227 P. 823 (Colo. 1924) (noting policy language that "the mortgagee . . . shall notify this company of the commencement of foreclosure proceedings"); Hole v. Nat'l Fire Ins. Co. of Hartford, Conn., 252 P. 263, 263-65 (Kan. 1927) (noting that "the policy contained a provision that it became void if foreclosure proceedings were commenced.").

The mortgage clause at issue in the present case contains no such language. Thus, the cases finding that the commencement of foreclosure proceedings amounts to an increase in hazard based on specific language in the policy do not compel the result advocated by Tennessee Farmers.

We conclude that the Bank was not required to give notice to Tennessee Farmers of the initiation of foreclosure proceedings, and therefore, the lack of notice does not invalidate the insurance coverage in this case. First, we decline to assume that the mere commencement of foreclosure proceedings, by itself, automatically constitutes an increase in hazard which, in the absence of specific policy language so providing, warrants defeating the insurance coverage. There are no facts in the record which support this conclusion, and we are not willing to assume, absent proof, that a homeowner facing a foreclosure sale will set fire to his or her property for monetary gain. Notably, the property at issue in this case burned not because of an impending foreclosure sale, but rather due to a mishap during an occupant's production of an illegal substance. Further, the foreclosure that was commenced was stayed pursuant to an order of the bankruptcy court. Therefore, at the time of the fire, there was no ongoing foreclosure proceeding.

Second, we decline to read into this policy an obligation to notify the insurer of the commencement of foreclosure. In our view, the insurer is essentially asking us to write a new contract for the parties in accordance with its idea of what the policy should have said. This we decline to do, as our duty is to construe and enforce the policy as written, not make a new contract for the parties on different terms. See Raulston v. Mut. Benefit Health & Accident Ass'n, 118 S.W.2d 881, 884-85 (Tenn. Ct. App. 1938).

We do not agree that by its plain meaning the phrase "increase of hazard" includes the commencement of foreclosure proceedings, and consequently, the Bank's failure to give notice to Tennessee Farmers that it had commenced foreclosure on the insured's residence did not invalidate the insurance coverage.

## B.  Statutory Provisions

Although an insurance policy is a contract governed by general principles of contract law, McKimm v. Bell, 790 S.W.2d 526, 527 (Tenn. 1990), any applicable statute must also be considered in this case because insurance is subject to statutory regulation in this state.  See Tenn. Code Ann. §§ 56-1-101 to 109 (2008).  If the terms of an insurance policy do not comport with the statutory requirements, the statutory requirements supersede the conflicting policy provisions and become part of the insurance policy itself.  Christenberry, 160 S.W.3d at 492.  The relevant statute in this case is Tennessee Code Annotated section 56-7-804, which provides as follows:

> When any person, as . . . mortgagee, . . . possesses or has any fire insurance policy
>
> on realty made payable to the person . . . then the insurance as to the interest of the . . . mortgagee . . . shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by change in title or ownership of the property, nor by occupation of the premises for purposes more hazardous than are permitted by the policy; *provided, that . . . the mortgagee . . . shall notify the insurance company of any* change of ownership or occupancy or *increase of hazard*[2] that comes to the knowledge of the mortgagee.

Tenn. Code Ann. § 56-7-804 (emphasis added).[3]  The statute further provides that the lienholder "shall, on demand, pay the premium for the increased hazard . . . or otherwise the policy shall be null and void."  Id.  The statute also gives the insurer the right to cancel the policy.  Id.

As with the language of the standard mortgage clause in the policy, Tennessee Farmers argues that the phrase "increase of hazard" in section 56-7-804 includes the commencement of foreclosure proceedings, and that the Bank's failure to notify Tennessee Farmers of its commencement of those proceedings invalidated coverage of the Bank's interest in the property.  In response, the Bank contends that "increase of hazard" as used in section 56-7-804 does not include the commencement of foreclosure proceedings, and that the statute prohibits Tennessee Farmers from invalidating the insurance policy based on the Bank's commencement of foreclosure proceedings.

---

[2] We construe the policy phrase "increase in hazard" and the statutory phrase "increase of hazard" to be synonymous.

[3] Although we quote the current language of section 56-7-804, we note that it is nearly identical to the version of the statute in effect at the time relevant to this lawsuit.  Because our analysis does not differ under either version of the statute, we have cited the current version.

In addressing these arguments, we note that the structure of section 56-7-804 parallels the structure of the standard mortgage clause in the policy. Like the policy, the statute provides that the lienholder's interest in the property will not be invalidated by acts or neglect of the insured or by foreclosure. The statute, again like the policy, includes a provision that the lienholder must notify the insurance company of any increase of hazard of which the lienholder becomes aware. Thus, while protecting the lienholder from invalidation of the policy based on actions of the insured or foreclosure, the statute makes the lienholder's protection contingent on its discharge of the duty to notify the insurance company of an increase of hazard that the lienholder discovers. In short, there is no substantive difference between the requirements of the statute and the standard mortgage clause in the policy itself. Accordingly, we find no reason to construe the statute and the policy differently. Indeed, statutes, such as section 56-7-804, stem from a desire to legislatively recognize the widespread use of standard mortgage clauses in property insurance policies. See William A. McNab, Minnesota Loss Payable Clauses in Fire Insurance Policies: Falling Short of the Minimum Coverage Requirements, 26 Wm. Mitchell L. Rev. 557, 568-70 (2000). In fact, by 1951 most states had legislation in place requiring the use of some form of a standard mortgage clause in policies insuring property. Id. at 569.

Although Tennessee's statutory version of a standard mortgage clause has been in place since 1925, few cases have construed its terms. In Phila. Fire & Marine Ins. Co. v. Fields, 13 Tenn. App. 485 (1931), a lienholder asserted a claim under an insurance policy after the insured property was destroyed by fire. Id. at 486. Like Tennessee Farmers in the present case, the insurance company in Fields asserted that the policy was void because the lienholder had instituted foreclosure proceedings and failed to notify the insurance company of that fact. Id. at 489. The Fields court, construing section 56-7-804, held that, despite the lienholder's commencement of foreclosure proceedings, "he was not required by [the statute] to notify the [i]nsurance [c]ompany of that fact. He was only required to notify it of any change of ownership or occupancy or increase of hazard which should come to his knowledge." Id. at 490.

In a more recent case, Provident Bank v. Tenn. Farmers Mut. Ins. Co., 234 F. App'x 393, No. 06-5502, 2007 WL 1296033 (6th Cir. 2007), the Sixth Circuit held that the insurer was not entitled to summary judgment because the term "foreclosure" in the insurance contract was ambiguous. As in the case before us, the lienholder commenced foreclosure proceedings on the insured property without notifying the insurance company. The insured homeowners filed for bankruptcy which stayed the foreclosure process. The property was then destroyed by fire. The lienholder filed a claim, which was denied by the insurance company because the lienholder failed to notify it of the foreclosure proceedings. The district court held that the initiation of foreclosure proceedings did not increase the risk of hazard within the meaning of section 56-7-804. On appeal, the Sixth Circuit found that the term "foreclosure" in the policy's mortgage clause was ambiguous because it could be construed to mean the commencement of foreclosure proceedings or the conclusion of those proceedings. Id. at 396-97. The Sixth Circuit did not address whether the institution of foreclosure proceedings amounted to an increase in hazard under the statute as the district court found.

We have determined that section 56-7-804, like the mortgage clause in the policy, does not identify the commencement of foreclosure proceedings as an increase of hazard. Moreover, as we have already held in construing the policy itself, we are unwilling to find that the commencement of foreclosure proceedings constitutes an increase of hazard given the plain and ordinary meaning of the phrase "increase of hazard." We note in this regard that the phrase "increase of hazard" in the context of insurance is synonymous with "increase of risk of loss." 6A Couch on Insurance § 94:18. An increase of hazard takes place "when a new use is made of the insured property, or when its physical condition is changed from that which existed when the policy was written, and the new circumstances increase[] the risk assumed by the insurer." Id. at § 94:19. Thus, an increase of hazard "requires either a change in the insured or the insured property that will increase the probability that the property will be destroyed." Id. In contrast with a physical hazard, a "moral hazard" is a "risk, danger, or probability that the insured will destroy . . . the insured property for the purpose of collecting the insurance." Id. at § 94:18. As indicated above, we decline to assume that the mere commencement of foreclosure proceedings, by itself, constitutes an increase of hazard which, in the absence of specific policy or statutory language to the contrary, warrants defeating the insurance coverage.

Finally, we note that section 56-7-804 does not expressly require notification that the lienholder has commenced foreclosure proceedings against the insured property. Had the legislature intended to make the lienholder's recovery contingent upon such notification, it could have done so by explicit language. However, it did not, and we cannot judicially amend the statute to add such a requirement. See McBrayer v. Dixie Mercerizing Co., 144 S.W.2d 764, 768 (Tenn. 1940) (concluding that courts "cannot, of course, under the guise of construction amend or alter" statutes). Thus, we agree with the Bank's contention that the commencement of foreclosure proceedings does not constitute an increase of hazard for purposes of section 56-7-804. Therefore, the Bank's failure to notify Tennessee Farmers that it had initiated foreclosure proceedings against the insured residence does not invalidate the insurance coverage under the statute.[4]

## III. Conclusion

In sum, we hold that the commencement of foreclosure proceedings does not constitute an increase of hazard for notice purposes under a standard mortgage clause in an insurance policy or for purposes of Tennessee Code Annotated section 56-7-804. Therefore, the Bank's failure to give notice to Tennessee Farmers of the commencement of foreclosure proceedings on the insured's residence does not invalidate the policy. Accordingly, the judgment of the Court of Appeals is

---

[4] The parties raise other issues, such as whether the Bank is prohibited on privacy grounds from disclosing a customer's personal financial information to an insurance company, and whether, assuming the Bank had a duty to notify the insurer of foreclosure, the commencement of foreclosure constitutes a foreclosure. Our resolution of the appeal makes it unnecessary to reach these ancillary issues.

reversed, and the case is remanded to the trial court. Costs are taxed to Tennessee Farmers Mutual Insurance Company and its surety, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE