[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-14983
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2012
JOHN LEY
CLERK

D. C. Docket No. 5:09-cv-00751-IPJ


UNITED STATES STOVE COMPANY,

Plaintiff-Counter Defendant-
Appellee,

versus

STEADFAST INSURANCE COMPANY,

Defendant-Counter Claimant-
Appellant.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(March 21, 2012)

Before EDMONDSON, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Steadfast Insurance Company ("Insurer") appeals the district court's grant of summary judgment in favor of the insured, United States Stove Company ("US Stove"), and against Insurer's counter-claim for payment of the deductible on claims paid by Insurer. No reversible error has been shown; we affirm.

US Stove manufactures solid fuel stoves and furnaces. Insurer issued US Stove a commercial general liability insurance policy (the "Policy") which provided insurance coverage to US Stove for liability arising from defective products. US Stove's Model 6300 stove had a design defect -- soot emissions caused property damage to purchasers' homes -- that resulted in 128 claims being filed against US Stove. The claims began to be received by US Stove around November 2008; the claims were separated in time, location, and the extent of damages. US Stove then designed a "fix" that was applied to the Model 6300 to prevent soot emissions.

The parties agree that the Policy covers US Stove's liability for claims arising from the Model 6300 defect. The parties also agree that no material facts are in dispute and filed cross-motions for summary judgment. The crux of the parties' disagreement -- and the issue on appeal -- is what deductible applies to the 128 claims filed against US Stove. US Stove maintains -- and the district court

concluded -- a single deductible applies to all sooting claims arising from the design defect. Insurer maintains that a separate deductible applies to each sooting claim arising from the defect.

The Policy provided commercial general liability coverage for bodily injury and property damage caused by an occurrence. And the Policy defined an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage.'" Endorsement No. 5 to the Policy, entitled "Deductible Endorsement," sets out a deductible of $25,000. And, about that deductible, Insurer offered US Stove a choice of a per claim or per occurrence deductible. Endorsement No. 5 reads:

> (A)    PER CLAIM BASIS -  If the deductible is on a "per claim" basis, the deductible amount applies to all damages and "defense costs" because of "bodily injury", "property damage", "personal injury" and "advertising injury" sustained by one person or organization as a result of any one "occurrence" or offense.

> (B) PER OCCURRENCE BASIS - If the deductible is on a "per occurrence" basis, the deductible amount applies to all damages and "defense costs" because of "bodily injury", "property damage", "personal injury" and "advertising injury" as the result of any one "occurrence" or offense regardless of the number of persons or organizations who sustain damages and "defense costs" because of that "occurrence" or offense.

US Stove opted for the "per occurrence basis" for computing the applicable deductible.

The parties advanced competing interpretations of the term "occurrence" in the Policy; the district court concluded that the language of Endorsement No. 5 resolved any ambiguity that might otherwise exist. As the district court observed, Endorsement No. 5 draws a clear distinction between "claims" and "occurrences." Under the "per claim" deductible, each claim for damages sustained by one entity as a result of an "occurrence" is subject to a separate deductible. And under the "per occurrence" deductible, all damages sustained by all entities as a result of a particular event are subject to a single deductible. US Stove opted for a "per occurrence" deductible; it rejected the "per claim" option.

Citing Kuhn's of Brownsville, Inc. v. Bituminous Cas. Co., 270 S.W.2d 358 (Tenn. 1954), Insurer argues that Tennessee law[1] requires the court to look to the effect of an occurrence rather than its cause. Under the "effects" test, adopted by a minority of states, the number of occurrences is determined from the vantage point of the injured party. The majority of states have adopted the "cause" test; under the cause test the number of occurrences is determined from the vantage point of the insured.

---

[1]The parties agree that Tennessee law applies.

In Kuhn's of Brownsville, the Tennessee Supreme Court ruled that a single act by the insured -- a building excavation -- that resulted in two separate building collapses on opposite sides of the excavation site two days apart were two separate "accidents" under a liability policy's "per accident" limitation of liability. Insurer asserts that under Kuhn's, it is clear that Tennessee has adopted the "effects" test to determine whether damages are the result of a single or multiple occurrences, and under the "effects" test each instance of sooting damage resulting from the single design flaw represents a separate occurrence for purposes of determining the applicable deductible.

Applying general principles of contract interpretation and insurance law, the district court rejected Insurer's arguments. We agree. Kuhn's is distinguishable: it addressed a liability limitation -- not a deductible provision -- and it involved no policy provision that differentiated specifically between a "claim" and an "occurrence." Insurer concedes that, under the particular facts of the present case, the position it advocates would render the distinction drawn in Endorsement No. 5 between "claims" and "occurrences"meaningless: the same deductible would be owed under the "per claim" and "per occurrence" options in the Policy. But as the district court observed, to accept Insurer's position would eviscerate Endorsement No. 5; it would fail to give effect to the intention of the parties as reflected by the

5

choice offered by Endorsement No. 5 and the "per occurrence" option selected by

US Stove.[2]

Insurer argues that it is only the peculiar facts of the present case that render

Endorsement No. 5 meaningless; hypothetical scenerios are offered where the

Endorsement would have meaning if we were to accept Insurer's construction of

the Policy. But these hypotheticals are strained. The unambiguous purpose of

Endorsement No. 5 was to draw a distinction between "claims" and "occurrences"

for purposes of determining the applicable deductible. Insurer elected to draft a

policy that allowed the insured to select which deductible option would apply.[3]

US Stove selected a per occurrence option. The plain and ordinary meaning of the

Endorsement, as well as the intent of the parties, support a construction of the

---

[2]It is the obligation of the court to determine and effectuate the intention of the parties. See U.S. Bank, N.A. v. Tennessee Farmers Mut. Ins. Co., 277 S.W.3d 381, 386-87 (Tenn. 2009) "Insurance contracts, being subject to the same rules of construction as contracts generally, should be interpreted and enforced as written. Absent fraud or mistake, the terms of a contract should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties." (Internal citations omitted).

[3]The "per occurrence" language in Insurer's policy earlier was construed in Parker Hannifin Corp. v. Steadfast Insurance Co., 445 F.Supp.2d 827 (N.D. Ohio 2006). In that case, the district court concluded as a matter of law that the malfunction of plaintiff Parker's gaskets -- which caused damages to unrelated claimants over a period of time -- arose from a single occurrence. Insurer seeks to nullify the significance of Parker Hannifen by arguing that Ohio -- unlike Tennessee -- uses the "cause test." We do not rely on the Parker Hannifen decision in our resolution of the instant appeal; but it does reinforce our construction of the Policy. And, as the Parker Hannifen court noted, Insurer, as draftsmen of the Policy, could have avoided this result.

Policy that imposes a single deductible for all claims flowing from a single design defect occurrence.

AFFIRMED.