IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 13, 2012 Session

## ESTATE OF JOSEPH OWEN BOOTE, JR.,
### HELEN BOOTE SHIVERS AND LINDA BOOTE, CO-EXECUTORS
### v.
## RICHARD H. ROBERTS, COMMISSIONER,
## TENNESSEE DEPARTMENT OF REVENUE

**An Appeal from the Chancery Court for Davidson County**
**No. 11-1037-IV     Russell T. Perkins, Chancellor**

---

**No. M2012-00865-COA-R3-CV - Filed March 28, 2013**

---

This appeal involves a claim for interest on inheritance and estate tax refunds. In 2002, the decedent's estate filed a Tennessee inheritance tax return and paid an estimated amount of taxes due. Over the next several years, the estate was embroiled in litigation; the litigation expenses diminished the size of the estate. Once the litigation concluded, the estate became entitled to more deductions on its inheritance tax return. To obtain the benefit of the deductions, the estate filed two amended Tennessee inheritance tax returns, one in 2009 and one in 2010, claiming that it was entitled to substantial tax refunds based on its overpayment of inheritance and estate taxes in 2002. The defendant Commissioner of the Tennessee Department of Revenue paid the refunds claimed in the estate's amended returns, plus a pittance of interest on the refunds. The estate filed this lawsuit against the commissioner, claiming that it was entitled to additional interest on the inheritance and estate tax refunds under the applicable law. The parties filed cross-motions for summary judgment; each agreed that the facts are undisputed and each claimed that it was entitled to judgment as a matter of law. The trial court granted summary judgment in favor of the commissioner. The estate now appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Andree S. Blumstein and Linda R. Koon, Nashville, Tennessee, for the Plaintiff/Appellant Estate of Joseph Owen Boote, Jr., Helen Boote Shivers and Linda Boote, Co-Executors

Robert E. Cooper, Jr., Attorney General & Reporter; William E. Young, Solicitor General; and R. Mitchell Porcello, Assistant Attorney General, for the Defendant/Appellee Richard H. Roberts, Commissioner, Tennessee Department of Revenue

## OPINION

### FACTS AND PROCEEDINGS BELOW

### Background

Joseph Owen Boote, Jr. ("Mr. Boote"), died testate on September 12, 2001, leaving a sizable estate. He was survived by his wife, Mrs. Martha M. Boote ("Wife"), and two daughters from a previous marriage, Helen Boote Shivers and Linda Boote. Mr. Boote's Last Will and Testament was duly probated in the Chancery Court for Marshall County, Tennessee, and his daughters were appointed as the co-executors of his estate ("the Estate").

This appeal involves a dispute over the amount of interest due to the Estate for overpaid inheritance and estate taxes. The parties do not dispute the underlying facts involved in this controversy. They submitted to the trial court a document entitled "Joint Stipulations of Material Facts" with their respective motions for summary judgment. Those stipulated facts are the basis for our analysis of the issues on appeal.

### Tennessee Inheritance and Estate Taxes

A general overview of Tennessee's inheritance and estate taxes, sometimes rather unflatteringly termed "death taxes," is helpful to an understanding of the issues on appeal.

Under the Tennessee Inheritance Tax Statute, an inheritance tax is imposed upon the beneficiary of an estate for the privilege of acquiring an estate by succession. *Woods v. Paschall*, 547 S.W.2d 575, 577 (Tenn. 1977); *see* Tenn. Code Ann. §§ 67-8-301 to 67-8-507 (2011 & Supp. 2012). Tennessee inheritance taxes are imposed on an estate if the value of the net taxable estate exceeds the maximum single exemption allowed on the date of the decedent's death.[1] *See* Tenn. Code Ann. § 67-8-314 (Supp. 2012) (tax rates). The value of the net taxable estate may be reduced by certain deductions, such as administrative costs, the

---

[1]In 2001, the year Mr. Boote died, the maximum single exemption was $675,000. Tenn. Code Ann. § 67-8-316(b) (Supp. 2012). The net taxable estate of Mr. Boote exceeded this exemption.

-2-

bequest to the surviving spouse (referred to as the "marital deduction"), and other things. As the deductions reduce the monetary value of the estate, the amount of Tennessee inheritance tax due is also reduced. *See* Tenn. Code Ann. § 67-8-315 (2011).

"The Tennessee Inheritance Tax Law is supplemented by the Tennessee Estate Tax Law." 2 Jack W. Robinson, Sr., et al., *Pritchard on Wills and Administration of Estates* § 978 (5th ed. 1994); *see* Tenn. Code Ann. §§ 67-8-201 to 67-8-217 (2011). The Tennessee estate tax is imposed "upon the transfer of the Tennessee estate of every decedent, the amount of which Tennessee estate tax shall be equal to the extent, if any, of the excess of the credit over the aggregate of state taxes . . . ." Tenn. Code Ann. § 67-8-204. In other words, the estate tax is essentially a tax measured by the difference between the Tennessee inheritance tax due and the maximum federal state death tax credit available on the federal tax forms. The Tennessee Supreme Court has described the estate tax as a "pickup" tax, the purpose of which is "to divert to state revenue funds which otherwise would have been payable to the United States Government under the federal estate tax law and to assure that the state received the maximum amount allowable as credit to a decedent's estate under the federal statute." *Woods v. Campbell*, 584 S.W.2d 451, 453 (Tenn. 1979). Thus, in order to determine Tennessee estate tax liability for a given estate, the estate's Tennessee inheritance tax liability and the federal state death tax credit must first be determined.

An estate is not required to file a separate estate tax return. Rather, the amount of estate tax due is included as a line item in the Tennessee inheritance tax return.

## Joint Stipulation of Material Facts

### *Original Inheritance Tax Return – Filed December 2002*

The Boote Estate's inheritance tax return was due to be filed on June 12, 2002.[2] On June 10, 2002, the Estate filed for an extension to file its inheritance tax return. At the time it requested the extension, the Estate paid Defendant/Appellee Richard H. Roberts, Commissioner of the Tennessee Department of Revenue ("Commissioner") $4,010,000 for the estimated inheritance and estate taxes due.

On December 12, 2002, the Estate filed its original Tennessee inheritance tax return. On that return, the Estate determined that it owed $2,698,342 in inheritance taxes and $1,400,295 in

---

[2]An inheritance tax return must be filed nine months after the death of the decedent, but an extension of one year may be granted if certain documents are filed with the request before the expiration of the nine-month period. *See* Tenn. Code Ann. § 67-8-419 (2011). If an extension is granted, the estate must pay the resulting tax liability plus interest on that amount from the date that the taxes were originally due.

estate taxes, for a total tax liability of $4,098,637. Because the Estate had paid $4,010,000 in June 2002, it paid the difference of $88,638 to the Commissioner when it filed its return. In calculating the taxes due on the original return, the Estate reduced the amount of the taxable estate by estimated funeral expenses and administrative expenses of $1,618,977. This amount included an estimated executor's commission of $750,000; estimated attorney fees of $759,000; estimated accountant fees of $30,000; estimated court costs of $3,981; and an estimated cost of the executor's bond of $58,650. Additionally, in its original return, the Estate used an estimated marital deduction of $624,200.50, even though by that time the amount of Wife's share of the Estate had already become the subject of litigation.

Because the additional $88,638 inheritance tax payment had been actually due in June 2002, interest was due on that additional payment in the amount of $3,885.87. On May 23, 2003, the Commissioner billed the Estate for the $3,885.87 in a Notice of Assessment. On June 9, 2003, the Estate paid the Commissioner $3,885.87 in accordance with the notice.

Thus, in total, the Estate paid the Commissioner $4,102,523.87 in inheritance and estate taxes plus interest in 2002 and 2003: $4,010,000 (June 2002 – advance taxes), $88,638 (December 2002 – additional taxes), and $3,885.87 (June 2003 – interest).

### *The First Amended Inheritance Tax Return — Filed January 2009*

Almost from the moment of Mr. Boote's death in 2001 until 2010, the Estate was ensnarled in complex litigation. Perhaps not surprisingly, the litigation generated substantial administrative expenses for the Estate. In turn, the Estate was entitled to a deduction on its inheritance taxes for those sizeable administrative expenses. The litigation also resulted in the Estate becoming entitled to a larger marital deduction. As noted above, both the deductions for administrative expenses and Wife's marital share had been estimated in the Estate's original tax return filed in December 2002. As the litigation progressed, however, it became apparent to the Estate that the estimated deduction amounts used in its 2002 return were insufficient. Although it was foreseeable in 2002 that the Estate would incur these expenses, their final and exact amount could not have been determined in 2002. In 2002, the Estate opted to pay the taxes owed using conservative estimates for those deductions, and thereby overpaid its Tennessee inheritance and estate taxes.

In November 2008, the litigation over Wife's marital share was finally settled. Once the amounts related to this litigation became ascertainable, the Estate sought to take the allowable deductions for those expenses. To that end, the Estate filed its first amended Tennessee inheritance tax return ("First Amended Return"), mailed to the Commissioner on

January 23, 2009.[3] On that return, the Estate reported an increase in the marital deduction of $3,000,000, an increase in the legal expenses of $1,776,394.70, and an increase in the bond expense of $7,499. The previously claimed deductions from the original return were also included in the return. Based on these deductions, the Estate requested a refund of $746,158.51 in overpaid inheritance and estate taxes.

Included with the First Amended Return was a copy of an Agreed Order dated November 6, 2008. The Agreed Order related to a meditation agreement in the underlying litigation over Wife's share of the Estate. It stated in relevant part that any tax refund due to the Estate as a result of an increased marital deduction was contingent upon the "receipt of written confirmation from the Internal Revenue Service that a marital deduction will be allowed." The order included alternate distribution instructions "if a marital deduction is not allowed for part or all of [the] distribution to [Wife]." Additionally, the Agreed Order noted that payments for "an Executor's fee" and "attorneys' fees" were "reserved for further proceedings." Thus, the distribution of funds in the Estate was contingent upon the decision by the Internal Revenue Service ("IRS") on how the increased marital deduction would be treated.

Upon the receipt of the Estate's First Amended Return, the Commissioner contacted the IRS to determine what deductions it had accepted and allowed for the Estate at the federal level. On September 29, 2009, the Commissioner received the IRS response. The IRS allowed the claimed marital deduction and some attorney fees, but it disallowed the executor's commission of $750,000. The IRS also disallowed the $759,000 in claimed attorney fees "until the exact amounts are determined."

The response the Commissioner received from the IRS indicated that it had tentatively allowed deductions and expenses at the federal level, so the Commissioner processed and issued a tentative refund for the Estate. On approximately November 25, 2009, the Commissioner issued a refund to the Estate in the amount of $516,246. This was considerably less than the amount claimed by the Estate. The refund the Commissioner issued to the Estate was comprised of the following:

| | |
|---|---|
| Inheritance tax refund: | $346,805.63 |
| Estate tax refund: | 164,531.82 |
| Interest refund: | 3,885.87 |
| Interest paid on refunds: | 1,022.68 |
| TOTAL: | $516,246.00 |

---

[3]The Stipulated Facts state that the First Amended Return was dated December 29, 2008, but was mailed to the Commissioner on January 23, 2009.

### *The Second Amended Inheritance Tax Return — Filed December 2010*

At the time the Estate filed its First Amended Return in early 2009, there was still ongoing litigation related to a claim for fees by a former executor and attorney fees for counsel retained by the executor. Almost two years later, in December 2010, the Estate filed a second amended inheritance tax return ("Second Amended Return"), which took into account the additional administrative expenses incurred by the Estate in that litigation. In the Second Amended Return, the Estate sought a refund of $261,997.13 for overpaid inheritance and estate taxes. This Second Amended Return was based on additional executor fees, legal expenses, and fees of $1,637,486. The Commissioner received the Second Amended Return on December 27, 2010.

On April 1, 2011, the Estate forwarded to the Commissioner the IRS Estate Tax Closing Document for the Estate. This document showed the final amount of federal estate tax due for the Estate. The Commissioner determined that this document was necessary to determine the amount of the federal net estate tax and the state tax credit available and, therefore, the final amount of Tennessee inheritance tax and estate tax due from the Estate. On May 23, 2011, the Commissioner issued a refund to the Estate based on the Second Amended Return. The refund was in the total amount of $263,279, comprised of the following:

| | |
|---|---|
| Inheritance tax refund: | $155,540 |
| Estate tax refund: | 107,322 |
| Interest paid on refunds: | 417 |
| TOTAL: | $263,279 |

### *Commissioner's Interest Calculations*

As we have indicated, the Commissioner paid the Estate a total of about $1,440 in interest on the $778,085 in inheritance and estate tax refunds under the First and Second Amended returns. The Commissioner calculated this amount of interest on the inheritance refunds in accordance with Tennessee Code Annotated § 67-1-801(b), which addresses how interest should be calculated on "any tax collected or administered by the commissioner." Tenn. Code Ann. § 67-1-801(b) (2011). Section 67-1-801(b) states in relevant part:

> (b)(1) When it is determined by administrative review that a person is entitled to a refund or credit of any tax collected or administered by the commissioner, . . . interest shall be added to the amount of refund or credit due, beginning forty-five (45) days from the date the commissioner receives proper proof to verify that the refund or credit is due and payable.

Tenn. Code Ann. § 67-1-801(b)(1) (2011). Thus, under this statute, interest on a tax refund begins to accrue 45 days after "proper proof" is received by the Commissioner. The rate of interest is determined by the Commissioner according to the formula rate of interest last published in the Tennessee Administrative Register. *See* Tenn. Code Ann. § 67-1-801(b)(3).

The Commissioner also applied this general interest statute, Section 67-1-801(b), to calculate the interest on the Estate's estate tax refunds. This was done pursuant to the directive of Tennessee Code Annotated § 67-8-208(d), which specifically applies to the rate of interest on a Tennessee estate tax refund. In its current version, it directs that an estate tax refund must be paid "together with interest thereon as provided in Section 67-1-801(b)," the above-quoted general interest provision. Therefore, the Commissioner calculated the interest on the inheritance tax refund as well as the estate tax refund pursuant to Section 67-1-801(b), the general interest statute.

In applying Section 67-1-801(b), the Commissioner determined that it had received "proper proof" of the refund for the First Amended Return on September 29, 2009, the date of the IRS's response to the Commissioner's inquiry about the federal tax treatment of the proposed deductions. Based on that premise, interest on the first refund began to accrue 45 days after September 29, 2009, *i.e.*, on approximately November 13, 2009. Because the first refund check was written on approximately November 25, 2009, and interest was paid at a rate of 7.25%, the Commissioner paid the Estate $1,022.68 in interest, broken down as follows: $688.38 (interest on inheritance tax) plus $326.59 (interest on estate tax) plus $7.71 (interest on 2003 interest payment).

For the Second Amended Return, the Commissioner concluded that a final determination of the inheritance and estate taxes was made on April 1, 2011, when the Estate forwarded to the Commissioner the IRS Estate Tax Closing Document for the Estate. Based on this, the Commissioner determined that interest on the second refund began to accrue 45 days after April 1, 2011, which was on May 15, 2011. Because the second refund check was written on May 23, 2011, the Commissioner paid the Estate $417 in interest: $247 (interest on inheritance tax) plus $170 (interest on estate tax).

**Lawsuit**

Unhappy with the Commissioner's calculation of the amount of interest paid on the tax refunds, on July 28, 2011, the Estate filed this lawsuit against the Commissioner. The Estate sought additional interest on the inheritance and estate tax refunds, alleging that the Commissioner misapplied the law in calculating the amounts of interest paid on both the First and Second Amended Returns.

As to the interest on the estate tax refunds, the Estate claimed that the Commissioner erroneously calculated the amount of the interest due by retroactively applying the current version of Section 67-8-208(d). The Estate asserted that the Commissioner should have applied the version of subsection (d) of the statute that was in existence in 2002, when the Estate made the estate tax overpayments. The version of Section 67-8-208 in effect at the time the payments were made in 2002 provided:

> (a) If the amount of federal estate tax is, upon the final determination of the federal estate tax, increased or decreased as affecting an estate the transfer of any part whereof is taxable hereunder subsequent to the payment of the Tennessee estate tax, the Tennessee estate tax imposed shall be changed accordingly. . . .
>
> (b) In the event that there shall be a decrease in the federal estate tax, the executor shall file with the commissioner of revenue an affidavit in such form as is prescribed by the commissioner . . . .
>
> . . .
>
> (d) The commissioner shall thereupon cause to be paid to the executor from the fund retained by the commissioner, as provided in § 67-8-210, the amount of refund found to be due, together with interest thereon at the rate of six percent (6%) from the date of payment of the Tennessee estate tax . . . .

Tenn. Code Ann. § 67-8-208 (2009). Thus, under this previous version of the statute, the Estate would have been entitled to interest on its estate tax refunds based on an interest "rate of six percent (6%) from the date of payment of the Tennessee estate tax." Using this rate, the Estate claimed, would have resulted in interest of $121,920 on the estate tax refunds.

The Estate conceded that the Commissioner was correct in calculating the amount of the interest on the inheritance tax refunds in accordance with the method set out in the general interest statute, Section 67-1-801(b). It argued, however, that the Commissioner improperly calculated the interest by erroneously using the dates on which it received information about the federal estate tax — September 29, 2009, and April 1, 2011, respectively — in determining the accrual date for the interest payments. Instead, the Estate argued, interest should have begun to accrue 45 days after the Commissioner received the First and Second Amended Returns. It claimed that the First and Second Amended Returns, along with all of the supporting documentation, constituted "proper proof" on which the Commissioner could have verified and paid the tax refunds within the meaning of the statute. Therefore, the interest on the two inheritance tax refunds should have begun accruing 45 days from the

dates on which the Commissioner received the First and Second Amended Tax Returns; the Estate claimed that this would have resulted in interest on the inheritance tax refunds in the amount of $23,104. Thus, in total, the Estate sought compensatory damages of $145,024, less the approximately $1,440 in interest already paid, plus attorney fees and costs.

On December 20, 2011, the Estate filed a motion for summary judgment, asserting that the facts were undisputed and that it was entitled to a judgment as a matter of law. The Estate attached to its summary judgment motion the affidavit of Helen Shivers, as well as numerous exhibits that included all of the tax returns filed, correspondence between the Commissioner and the Estate, and other relevant documentation.

On February 1, 2012, the Commissioner filed a cross-motion for summary judgment, maintaining that the amount of interest paid on the estate and inheritance tax refunds was correct. The Joint Stipulation of Material Facts to which we have referred was also filed on that day. The Commissioner attached to his summary judgment motion the affidavits of Amy Green, an employee with the Tennessee Department of Revenue, and Wendy McCormack, an attorney in the Attorney General's office, as well as relevant exhibits. The Commissioner argued in his motion that the former version of Section 67-8-208(d), on which the Estate relied, was inapplicable in this case. The Commissioner reasoned that, at the time he made the first refund payment to the Estate, no "final determination of the federal estate tax" had been made within the meaning of Section 67-8-208(a), which triggered the Estate's entitlement to a refund under the statute. By the time a "final determination" had been made in 2011, the Commissioner argued, Section 67-8-208(d) had been amended to its current form, and the 2011 version of the statute was properly applied. In the alternative, the Commissioner argued that 1986 Pub. Acts Ch. 749, codified in Section 67-1-801(b) in 1986 and commonly known as the "Wilder Bill," implicitly repealed and superseded any older, conflicting interest provisions, including Section 67-8-208(d). Therefore, the Commissioner argued, the general interest statute — Section 67-1-801(b) — controlled the interest paid on both refunds in their entirety.

Regarding the accrual date for the calculation of interest under Section 67-1-801(b), the Commissioner argued that it did not have proper proof to verify the amount of the refunds until he received the information about the IRS conclusions regarding the federal estate tax. Therefore, he claimed, because "proper proof" to verify the two refunds was received by the Commissioner on September 29, 2009, and April 1, 2011, respectively, it was appropriate to measure the interest on the Estate's refunds from those dates.

## Trial Court Decision

On February 24, 2012, the trial court conducted a hearing on the parties' cross-motions for summary judgment.[4] On March 21, 2012, the trial court issued a memorandum and order granting the Commissioner's motion for summary judgment and denying the Estate's motion. At the outset, the trial court rejected the Commissioner's argument that Section 67-8-208(d) was either expressly or impliedly repealed by the enactment of the Wilder Bill in 1986, because the statutes were not in conflict, and the legislature expressed no intention to repeal the interest provision in Section 67-8-208(d) when it promulgated the general interest statute. The trial court nevertheless concluded that the Commissioner had properly calculated the interest on the Estate's two estate tax refunds. It held that calculation of the interest under the current version of Section 67-8-208(d), and thus pursuant to the general interest statute, was correct because interest under Section 67-8-208(d) was triggered only "upon the final determination of the federal estate tax." The trial court held that the "final determination" requirement in subsection (a) was a prerequisite to the interest calculations in subsection (d): "[A] comprehensive review of the structure of the entire statute reveals that the subsection (d) language addressing interest simply cannot be separated and applied to a refund claim when none of the other earlier requirements of the statute have been met." Because the Estate's federal estate tax liability was not finalized until 2011, the trial court held, the version of the statute in effect at that time governed the calculation of interest on the Tennessee estate tax refund. For this reason, the trial court found, the application of the current version of Section 67-8-208(d) was proper, and it did not constitute retroactive application as argued by the Estate.

The trial court also held that the Commissioner had properly calculated the interest owed to the Estate on the inheritance tax refunds. It held: "The calculation of Tennessee's inheritance tax requires a determination of several federal estate tax deductions and expenses." The trial court found that the amended returns themselves did not provide the Commissioner with the information necessary to "verify" and issue a refund, because the refunds were reliant on information outside of the returns, and the amounts ultimately paid were different from the amounts claimed by the Estate. Thus, the trial court held, the Commissioner correctly determined that proper proof to verify the Estate's entitlement to refunds, as well as the amount of the refunds, was received on September 29, 2009, and April 1, 2011, when the Commissioner received documentation on the IRS's federal estate tax decisions. Therefore, it concluded, the Commissioner properly calculated the interest on the inheritance tax refunds beginning 45 days after it received that federal documentation. The trial court commented that it was concerned "with the equities associated with the State being allowed to have the use of the taxpayer's funds for so long without incurring a corresponding

---

[4]A transcript of that hearing was not included in the appellate record.

interest obligation," but ultimately determined that its decision was compelled by the statutes that were in effect.

In addition, the trial court held that the Commissioner, as the prevailing party, was entitled to reasonable attorney fees and expenses pursuant to Section 67-1-1803(d), but it reserved that issue "until all appeals are concluded." The trial court certified the March 21, 2012 order as final and appealable pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. From this order, the Estate now appeals.

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

On appeal, the Estate challenges the trial court's grant of summary judgment in favor of the Commissioner, making the same legal arguments it made to the trial court. On appeal, the Estate raises two specific issues:

> 1. Whether the 2011 version of Section 67-8-208(d) may be applied retroactively to interest on refunds of estate taxes that were paid in 2002?
>
> 2. Whether the receipt by the Commissioner of the First and Second Amended Returns constituted "proper proof" within the meaning of Section 67-1-801(b) to verify that the refund of inheritance tax was due and payable, thereby triggering the date on which interest began to accrue on that refund?

The Commissioner raises an additional issue in his appellate brief, namely, whether the trial court erred in holding that Section 67-8-208(d) was not repealed by the Wilder Bill, either expressly or by implication. Arguing in the alternative, the Commissioner asserts that this is an additional reason supporting the trial court's grant of summary judgment on the estate tax issue.

The trial court's resolution of a motion for summary judgment is a conclusion of law, which we review *de novo* on appeal, according no deference to the trial court's decision. ***Martin v. Norfolk S. Ry. Co.***, 271 S.W.3d 76, 84 (Tenn. 2008). Summary judgment is appropriate only when the moving party can demonstrate that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *see **Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 5 (Tenn. 2008); ***Byrd v. Hall***, 847 S.W.2d 208, 214 (Tenn. 1993).

-11-

This action was filed on July 28, 2011. Therefore, the trial court was required to apply the summary-judgment standard set forth in Tennessee Code Annotated § 20-16-101.[5] That statute provides:

> In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
>
> > (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> >
> > (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (Supp. 2012).[6]

In this case, the parties stipulated to the pertinent facts, and the only issues presented are questions of law. "Summary judgments are appropriate in virtually any civil case that can be resolved on the basis of legal issues alone." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 81 (Tenn. 2010). As the trial court recognized, "[b]ecause legal disputes involving the payment of taxes are frequently based on stipulated facts, they generally lend themselves to disposition by summary judgment as issues of law." *Id.* Nevertheless, "the well-understood principles generally governing the review of summary judgments are equally applicable to summary judgments in proceedings involving tax disputes." *Id.* at 81-82. Furthermore, when both parties move for summary judgment on undisputed facts, such cross-motions "are no more than claims by each side that it alone is entitled to a summary judgment. The court must rule on each party's motion on an individual and separate basis." *Id.* at 83 (citation omitted).

---

[5]Section 20-16-101 is applicable to all cases filed on or after July 1, 2011.

[6]Section 20-16-101 was enacted to abrogate the summary-judgment standard set forth in *Hannan*, which permitted a trial court to grant summary judgment only if the moving party could either (1) affirmatively negate an essential element of the nonmoving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Hannan*, 270 S.W.3d at 5. The statute is intended "to return the summary judgment burden-shifting analytical framework to that which existed prior to *Hannan*, reinstating the 'put up or shut up' standard." *Coleman v. S. Tenn. Oil Inc.*, No. M2011-01329-COA-R3-CV, 2012 WL 2628617, at *5 n.3 (Tenn. Ct. App. July 5, 2012).

The issues presented in this appeal involve statutory construction, which are questions of law to be reviewed *de novo*. ***U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.***, 277 S.W.3d 381, 386 (Tenn. 2009). In construing a statute, our duty "is to ascertain and give effect to the intention and purpose of the legislature." ***Jordan v. Knox County***, 213 S.W.3d 751, 763 (Tenn. 2007). Whenever possible, this intent is gleaned from the plain and ordinary meaning of the statutory language. ***Id.*** A statute should be read naturally and reasonably, presuming that the legislature says what it means and means what it says. ***See In re Samaria S.***, 347 S.W.3d 188, 203 (Tenn. Ct. App. 2011). If the language of a statute is clear, we apply the plain meaning of the statute without complicating the task and without giving it "a forced interpretation that would limit or expand the statute's application." ***Eastman Chem. Co. v. Johnson***, 151 S.W.3d 503, 507 (Tenn. 2004).

## ANALYSIS

### Retroactive Application of Tennessee Code Annotated § 67-8-208(d)

The Estate first argues that the trial court erred in applying the 2011 version of Section 67-8-208(d) retroactively in determining the interest due on its estate tax refunds. It points out that the former version of the statute, allowing for 6% interest "from the date of payment of the Tennessee estate tax," was in effect in 2001 when Mr. Boote died, in 2002 when the estate taxes were paid, and in 2009 when the first estate tax refund was paid. The amendment to the special provision did not become effective until July 1, 2010, after the Estate's right to a refund had already vested. For this reason, the Estate argues, the Commissioner improperly applied the amended version of Section 67-8-208(d) retroactively to its estate tax refund.

In response, the Commissioner argues that the trial court correctly applied the version of Section 67-8-208(d) in effect in 2011, because "the Estate failed to meet the requirements to trigger an interest payment under the old version of Tenn. Code Ann. § 67-8-208(d)." In accord with the trial court's decision, the Commissioner claims that Section 67-8-208 addresses an adjustment of the Tennessee estate tax "upon change in federal tax payment," and only after "the final determination of the federal estate tax" has been made. Because "the final determination of the federal estate tax" was made in 2011, the Commissioner argues, 2011 was the year in which the Estate became entitled to a refund under the statute; there was nothing to trigger the statute prior to that time. Therefore, the former version of the statute never became applicable to the Estate, and the trial court's application of the 2011 version of the statute did not constitute a "retroactive application" of the statute.

"In Tennessee, amendments to tax statutes are presumed to be prospective in application unless an intention to the contrary is clearly expressed." ***Northwest Airlines, Inc. v. Tennessee State Bd. of Equalization***, 969 S.W.2d 911, 913 (Tenn. 1998). This presumption

arises in part from an age-old rule of law: "The repeal of a statute does not affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed." *Id.* (quoting *Nashville Ry. & Light Co. v. Norvell*, 124 S.W. 613, 614 (Tenn. 1910) (quoting statute now codified at T.C.A. § 1-3-101)).

The Court in *Northwest Airlines* recognized this principle. In that case, the petitioner airline and railroad businesses sued the Tennessee State Board of Equalization in federal district court, challenging the board's assessment of certain property taxes for the years 1990 through 1995. The parties reached a settlement as to most of the issues; pursuant to the settlement agreement, the petitioners owed taxes to some counties and municipalities and were due refunds from others. The only issue in *Northwest Airlines* that remained unresolved was the appropriate interest rate to be applied to the refunds and additional payments due pursuant to Section 67-5-1512(b)(2). *Id.* at 912. For the tax years in question, the relevant statute provided that the rate of interest was the composite prime rate. On April 22, 1996, however, the statute was amended to lower the interest rate to the composite prime rate minus two points. The issue then became whether the interest on any of the refunds or additional payments for the tax years 1990 through 1995 — all of which were made after April 22, 1996 — should have been calculated under the former version of the statute or the newer version. The federal district court certified the question to the Tennessee Supreme Court, which accepted certification. *Id.* at 911.

The taxpayers in *Northwest Airlines* argued that the lower, post-amendment rate should apply, even to interest that accrued prior to the effective date of the amendment. They asserted that, because the certification of a final assessment by the state board of equalization for each taxable year would not occur until after April 22, 1996, application of the 1996 amendment would not be a retroactive application. In the alternative, the taxpayers argued that the post-amendment rate should be applied retroactively. *Id.* at 913. Addressing the certified question, the Tennessee Supreme Court held that retroactive application of tax statutes is impermissible unless the statute includes express language providing for its retroactive application. Because the statute contained no express language providing for its retroactive application, the Supreme Court held that "[t]he answer to the certified question is that only the interest on payments or refunds of property taxes accruing after April 22, 1996 are to be calculated" under the post-amendment version of the statute. *Id.* at 914.

In the instant case, the Estate argues that *Northwest Airlines* supports its position that the trial court is not permitted to apply the 2011 version of Section 67-8-208(d) retroactively. The Estate claims that its entitlement to the interest on the refund vested when it made the tax overpayment in 2002, and that application of the 2011 version of the statute violated the rule against retroactive application of a tax statute absent any statutory language indicating

that it is to be applied retroactively. The Estate argues: "The duties and rights that existed in 2002 are the duties and rights that the Boote Estate retains, even after the law was amended." It further asserts that when it paid the estate taxes in 2002, "it did so in reliance on the fact that any overpayment would be refunded with interest at a rate of 6% from the payment date" under Section 67-8-208(d) as it then existed. For these reasons, the Estate argues, the 2002 version of the statute is applicable, and the Commissioner should have paid interest on the estate tax refund pursuant to that version of the statute.

The Commissioner has pointed to no language in the July 2010 amendment to Section 67-8-208(d) indicating that the amendment was intended to be retroactive in nature, so the Estate rightly maintains that we are to presume that the amended statute must be applied prospectively. The Commissioner, however, does not argue that the statute should be retroactively applied. Rather, he claims that the trial court's application of the current version of the statute does not constitute retroactive application of the statute at all. The Commissioner asserts that the Estate's right to a refund of any estate tax paid is triggered under the statute only by "the final determination of the federal estate tax" indicating that the Tennessee estate tax would be reduced thereby. In other words, the Estate's right to a refund did not vest until after this final determination of federal estate tax was made. We agree.

As this Court has noted: "There is no common-law or equitable cause of action to recover taxes voluntarily paid in error." *SunTrust Bank, Nashville v. Johnson*, 46 S.W.3d 216, 223 (Tenn. Ct. App. 2000). Instead, the recovery of such a voluntary overpayment is "a matter of legislative grace." *Id.* Thus, because an action to recover a tax refund, along with the interest on the refund, is based entirely on statute, the statutes entitling a taxpayer to a refund must be strictly followed. *Id.*

The Estate cites no authority to support its contention that its right to a refund vests when the tax overpayment is made, and we have found none.[7] In our view, the plain language of Section 67-8-208(a) clearly directs that the taxpayer is entitled to an estate tax refund only where "the amount of federal estate tax is, upon the final determination of the federal estate tax, increased or decreased . . . ." This language indicates that the Estate's right to a refund accrues when the amount of federal estate tax has changed upon "final determination."

In this case, the final determination of the federal estate tax was made and conveyed to the Commissioner in 2011; this in turn resulted in a decrease in the Estate's Tennessee estate tax

---

[7]The Estate claims that the Commissioner's reliance on the "final determination" language in subsection (a) is misplaced because "[t]here is nothing in subsection (a) that deals with interest or with accrual dates for interest." We respectfully disagree that subsection (a) and subsection (d) are unrelated. To the contrary, subsection (a) provides the conditions under which all of the other subsections become effective.

liability. At this point in time, the Estate became entitled to a refund of its overpaid estate taxes. Thus, based on the plain language in Section 67-8-208(a), the Estate's right to a refund did not accrue when the overpayment was made in 2002, but rather in 2011 when a final determination of the federal estate tax was made. For this reason, we agree with the trial court's reasoning, that its application of the 2011 version of the statute was not in fact a retroactive application of the statute. Rather, it was simply an application of the statute in effect when the Estate's right to the refund vested.

The Estate insists that the Commissioner should be obligated to pay interest from the time that the tax payments were made in 2002 because "the State has had the use of the funds since 2002." This is a valid point, noted by the trial court when it expressed concern about the length of time the State has had the use of the taxpayer's funds. However, it amounts to a policy argument in a case in which the rights of the Estate are entirely circumscribed by statute. We agree with the trial court that, regardless of where the equities lie, we are bound by the plain language in Section 67-8-208(d), indicating that the right to interest on a Tennessee estate tax refund under that statute does not vest until a final determination of the federal estate tax obligation shows that such a refund is due. Therefore, because the Estate's entitlement to a refund of its estate taxes vested in 2011, the 2011 version of the statute was applicable, and the trial court's application of it in this case did not constitute a retroactive application of the statute. *See State v. McDougal*, 648 S.W.2d 254, 257 (Tenn. Ct. App. 1983) (holding that the right to increased interest began to accrue on the effective date of the amended interest statute, so the application of the amended interest statute did not constitute a retroactive application).

As a further alternative argument, the Estate contends that, even if the Commissioner's position is otherwise accepted, the 2009 version of Section 67-8-208(d) should apply to the refund of the estate taxes that were paid pursuant to the First Amended Return in November 2009, when the statute still provided for 6% interest from the date the estate taxes were paid. In making this argument, the Estate claims that, at that point, the IRS had provided for a tentative estate tax refund. It argues that there can be more than one "final determination" regarding different aspects of the federal estate tax under subsection (a), as evidenced by the fact that the Commissioner issued two estate tax refunds in this case. We respectfully disagree. It is undisputed that the refund paid to the Estate by the Commissioner in November 2009 was tentative, based on the information available at the time. In addition, the IRS had not at that time made a final determination of the Estate's federal estate tax obligation; it was clear that a final determination would be forthcoming. Thus, in November 2009, the IRS had not made a "final determination of the federal estate tax" under subsection (a) so as to implicate the interest provision in subsection (d). Therefore, although the Commissioner chose to pay a partial refund to the Estate in 2009, at that time there had been no final determination of the federal estate tax within the meaning of Section 67-8-208(a),

and the Estate's right to interest on the refund of estate taxes in Section 67-8-208(d) had not yet been triggered.[8]

## "Proper Proof" for Verification of Refund

The Estate concedes that the interest on the Estate's inheritance tax refunds should have been calculated under the method set out in Section 67-1-801(b). It argues, however, the First and Second Amended Returns and the attached documentation filed in January 2009 and December 2010, respectively, constituted the "proper proof" necessary for the Commissioner "to verify that the refund or credit [was] due and payable." Tenn. Code Ann. § 67-1-801(b). Therefore, the Estate argues, the interest on its inheritance tax refunds should have begun to accrue 45 days after the two amended returns were filed. This calculation would have resulted in a few more months of interest to the Estate on its inheritance tax refunds. The Estate notes that "proof" is defined as an "attested document that constitutes legal evidence," and that "proper" is defined as "adapted or appropriate to the purpose or circumstances, suitable." Because the First and Second Amended Returns were attested documents, sworn under penalty of perjury, and because they included all of the information necessary to verify that a refund was due and the amount of the refund, so the argument goes, the returns themselves must be considered to be "proper proof" under Section 67-1-801(b). The Estate points out that, where there is doubt about the interpretation of a tax statute, the statute must be construed strictly against the government and liberally in favor of the taxpayer. *See Home Builders Ass'n of Middle Tenn. v. Williamson County*, 304 S.W.3d 812, 817 (Tenn. 2010).

In response, the Commissioner acknowledges that the Estate's amended inheritance tax returns were attested documents and provided some information regarding the refunds. He argues, however, that they did not constitute "proper proof" from which the entitlement to and amount of refunds could be verified. Thus, the Commissioner asserts, the amended returns in and of themselves do not constitute "proper proof" to verify the refunds. The Commissioner notes that the amount of the refund actually paid to the Estate for the First Amended Return was significantly less than the refund amount claimed by the Estate, and the amount of the refund for the Second Amended Return was slightly more than the amount claimed. In addition, the Estate's entitlement to the refund claimed in the First Amended Return was specifically made contingent upon the IRS's treatment of the claimed deductions; thus, the federal tax treatment of the information in the Estate's amended returns was critical to a determination of the amount of any state inheritance tax refund due. The fact that the IRS disallowed some of the claimed deductions and notified the Commissioner of this fact

---

[8]To the extent that the Estate asserts a due process violation as a result of the retroactive application of Section 67-8-208, we decline to address this argument because the Estate has not shown that it was raised in the trial court proceedings below. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 448 (Tenn. Ct. App. 1991).

on September 29, 2009, demonstrates that the returns are not "proper proof" in and of themselves to verify the amount of the refund due. The Commissioner maintains: "This case presents a textbook example of why the Commissioner of Revenue requires verification from the IRS to substantiate a taxpayer's claims of federal deductions and expenses."

We have found no authority describing what constitutes "proper proof" to verify an inheritance tax refund. In this case, we agree with the Commissioner that the First and Second Amended Returns, without more, did not constitute the "proof" necessary to verify the entitlement to and amount of inheritance and estate tax refunds due to the Estate. As the Commissioner pointed out, the filing of the First Amended Return included the order from the underlying legal dispute over the amount of Wife's marital share. The order stated specifically that the Wife's share (and, consequently, the amount of the Estate's inheritance tax refund) was contingent upon the federal tax treatment of the additional claimed deductions. Without any documentation regarding the IRS treatment of the additional deductions claimed by the Estate, it would have been impossible to determine the amount of inheritance tax refund to which the Estate was entitled. Although the Estate argues that the inheritance tax refund is unrelated to the federal estate tax determination,[9] the order included with the First Amended Return linked the federal government's treatment of the claimed deductions to the inheritance tax refund due in this case. Therefore, the IRS response to the Commissioner's inquiry was necessary for a determination of the refund from the First Amended Return.

Moreover, the refund from the Second Amended Return was dependent on the "final determination" from the IRS. The Commissioner requested the IRS Estate Closing Document to assist it in verifying the information included with the Second Amended Return to determine or test the accuracy of the Estate's claim. The Estate indicated that the estate tax refund was requested as a part of the amended inheritance tax return. Even though the *inheritance* tax refund may not have been affected by the IRS determination of the federal estate tax (the Commissioner does not concede this), the estate tax refund could not be determined until the IRS issued a "final determination of the federal estate tax." This final determination was not provided to the Commissioner on April 1, 2011. Therefore, proper proof to verify the entire refund on the Second Amended Return was not provided to the Commissioner until that date.

_____

[9]In its reply brief, the Estate cites an Attorney General Opinion, No. 84-114, 1984 WL 186176 (Tenn. AG Apr. 4, 1984), for the proposition that the "calculation of the Tennessee inheritance tax is made pursuant to Tennessee law and is independent of the calculation of federal death taxes . . . ." That opinion, however, involves issues not related to those presented here, and we decline to adopt that reasoning on this issue.

In sum, we find that, although the documentation included in the First and Second Amended Returns provided the Commissioner with much of the information necessary to calculate the amount of refunds due, these returns were insufficient to verify the entitlement to and amount of the refunds due to the Estate. Under these circumstances, the Commissioner acted properly in measuring the amount of interest due from the date that it received the response from the IRS on September 29, 2009, and the date that the Estate forwarded to the Commissioner the federal Estate Tax Closing Document.

Our conclusion herein pretermits all other issues raised in this appeal.

## CONCLUSION

For the foregoing reasons, we hold that the Commissioner properly calculated the interest due on the Estate's inheritance and estate tax refunds. Accordingly, we affirm the trial court's grant of summary judgment in favor of the Commissioner and also the denial of the Estate's motion for summary judgment. The cause is remanded to the trial court for further proceedings consistent with this opinion.

The decision of the trial court is affirmed and the cause is remanded for further proceedings. Costs on appeal are to be taxed to Appellant Estate of Joseph Owen Boote, Jr. (Helen Boote Shivers and Linda Boote, Co-Executors), and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE