IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2013 Session

## MARY L. SPARKS v. JAMES E. DILLINGHAM, ET AL.
**and**
## JAMES E. DILLINGHAM, ET AL. v. PRESTIGE TITLE, LLC, ET AL.

**Direct Appeal from the Chancery Court for Williamson County
No. 38216      Derek Smith, Chancellor**

_____

**No. M2012-01535-COA-R3-CV - Filed June 4, 2013**

_____

This case presents a question of first impression regarding the scope of the term "lender" as used within the Tennessee Home Loan Protection Act. The parties filed competing motions for summary judgment: Plaintiff claiming that the Defendants were "lenders" subject to the Act and Defendants claiming that they were not "lenders" subject to the Act. The trial court concluded that Defendants were not "lenders," and therefore it granted summary judgment in Defendants' favor. For the following reasons, we reverse the trial court's grant of summary judgment to Defendants, we grant partial summary judgment in favor of Plaintiff, and we remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; The trial court's grant of summary judgment to the Dillinghams is reversed, partial summary judgment in favor of Ms. Sparks is granted, and we remand for further proceedings consistent with this opinion, including resolution of the factually-disputed issue of whether the Dillinghams violated section 45-20-103(7).**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., joined in results only, and J. STEVEN STAFFORD, J., joined.

Charles M. Cain, II, Franklin, Tennessee, for the appellant, Mary L. Sparks

J. David Wicker, Nashville, Tennessee, for the appellees, James E. Dillingham and Vickie L. Dillingham

## MEMORANDUM OPINION[1]

### I.  FACTS & PROCEDURAL HISTORY

In 2001, Mary L. Sparks purchased a home located at 1613 Flanders Court, Franklin, Tennessee ("the property").  In 2005, in exchange for a $60,000.00 loan, Ms. Sparks executed a promissory note ("GMFS Note") and a deed of trust ("GMFS Deed of Trust") on the property for the benefit of GMFS, LLC.  In 2008, Ms. Sparks received a notice of intent to foreclose on the GMFS Note, and in her efforts to prevent foreclosure, she was ultimately put into contact with Prestige Title, LLC ("Prestige Title"), owned by Carol T. Baker.  Ms. Baker agreed to assist Ms. Sparks in locating a "person that might be willing to make her a loan where she would not have to quitclaim her property[,]" as required by another would-be financier.  Eventually, Ms. Baker was put into contact with James Dillingham, who along with his wife, Vickie Dillingham, agreed to fund a loan to pay off the GMFS Note and refinance the loan.

The transaction between borrower Ms. Sparks, lenders James and Vickie Dillingham, and settlement agent Prestige Title, was closed on September 11, 2008.[2]  At that time, Ms. Sparks executed a promissory note to the Dillinghams along with a Deed of Trust on the property to Mary Frances Rudy, Trustee, to secure the note.  In addition to paying off the GMFS Note, the Dillinghams' $200,000 loan afforded Ms. Sparks $96,260.93 in cash.

Ms. Sparks defaulted on the loan from the Dillinghams, and on February 22, 2010, a foreclosure sale was conducted by Michael Davis, and the property was sold to Dan Heichelbech for $255,100.00.  After deducting costs, additional liens on the property, and repayment of the Dillingham loan, the foreclosure sale produced a surplus to Ms. Sparks of $550.28.

On April 28, 2010, Ms. Sparks filed a Complaint against the Dillinghams, Michael

---

[1]Rule 10 (Court of Appeals). <u>Memorandum Opinion</u>. -- (b) The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

[2]We simply refer to the titles listed on the "Settlement Statement."

Davis, and Dan Heichelbech. Ms. Sparks asserted numerous claims against the defendants; however, only one claim is relevant to this appeal.[3] Ms. Sparks claimed that the Dillinghams, in making the $200,000 loan, had violated certain provisions of the Tennessee Home Loan Protection Act (sometimes hereinafter, the "Act"), Tenn. Code Ann. § 45-20-101, *et seq*. The Dillinghams filed an Answer in which they denied violating the Act, and they filed a Third-Party Claim against Prestige Title and Terri Baker.[4]

On October 27, 2011, Ms. Sparks filed a Motion for Partial Summary Judgment against the Dillinghams and a supporting memorandum of law claiming that, as a matter of law, the Dillinghams were subject to–and had violated–the Act. On February 21, 2012, the Dillinghams filed a Cross-Motion for Summary Judgment and a supporting memorandum of law claiming that, as a matter of law, the Dillinghams were *not* subject to –and therefore *could not* have violated–the Act.

A hearing on the competing motions was held on April 2, 2012, after which the trial court granted summary judgment in favor of the Dillinghams, finding that they were not "lenders" subject to the Act.[5] The trial court's Order was made final pursuant to Rules 54 and 58 of the Tennessee Rules of Civil Procedure, and Ms. Sparks timely filed a Notice of Appeal to this Court.

## II. ISSUES PRESENTED

On appeal, Ms. Sparks presents the following issues for review:

1.     Whether the trial court erred in deciding that the Dillinghams were not lenders under the Act; and

2.     Whether the trial court erred in denying the Plaintiff's Motion for Partial Summary

---

[3]Ms. Sparks challenged the validity of the foreclosure sale, but pursuant to an Agreed Order, Ms. Sparks vacated the property and purchaser Dan Heichelbech was dismissed with prejudice from the lawsuit

[4]The Dillinghams filed a Motion for Default Judgment against Prestige Title based upon its failure to respond to the Third-Party Claim. The motion was granted, and the trial court entered an order stating that "indemnity does apply in this cause and any and all costs for the Dillinghams resulting from [this case] are the responsibility of Prestige Title and the Dillinghams shall be held harmless thereon; and that contribution from Prestige Title does apply in this cause to any and all costs resulting from the filing of the . . . matter by Ms. Sparks, as incurred by the Dillinghams."

[5]After determining that the Act did not apply, the trial court did not consider whether the Dillinghams' conduct would have violated the Act had they qualified as "lenders" under such.

Judgment.

For the following reasons, we reverse the trial court's grant of summary judgment to the Dillinghams, we grant partial summary judgment in favor of Ms. Sparks, and we remand for further proceedings consistent with this opinion, including resolution of the factually-disputed issue of whether the Dillinghams violated section 45-20-103(7).

## III.  DISCUSSION

### A.  Applicability of Tennessee Home Loan Protection Act

The Tennessee Home Loan Protection Act ("the Act"), Tenn. Code Ann. § 45-20-103, et seq., was enacted in 2006 to address predatory lending practices against consumers. **Richard A. Vance & Ronald G. Steen**, *Complying with the Tennessee Home Loan Protection Act,* **61 Consumer Fin. L.Q. Rep. 765 (2007)**.  In enacting the Act, the Tennessee legislature, unlike some states, did not simply adopt the federal HOEPA[6] thresholds for determining whether the Act applies to a particular loan. *Id.* at 767.  Instead, "the Act contains its own scope provisions[,]" disconnecting the Act's scope from future changes in federal law, and requiring Tennessee lenders to apply a separate calculation to determine applicability. *Id.*  Specifically, the Act applies only to a newly-created class of loans, termed "high-cost home loans," applied for and closed on or after January 1, 2007. *See id.* **at 771; Julie R. Caggiano, Therese G. Franzen, Leslie M. Howell, Laurence E. Platt,** *Predatory Lending Law Developments and Assignee Liability under HOEPA and State Law***, 62 Bus. Law. 617, 628 (Feb. 2007)**.  The Act defines a "home loan" as a loan where:

> the principal amount of the loan does not exceed the lesser of the conforming loan size limit for a single-family dwelling as established by Fannie Mae or $350,000; the debt is incurred primarily for consumer purposes; and the loan is secured by a mortgage or deed of trust on real estate with a structure or where a structure will be located.

---

[6]The Home Ownership and Equity Protection Act of 1994 (HOEPA) was enacted in 1994 as an amendment to the Truth in Lending Act. **Lynne F. Riley,** *The Bankruptcy Perspective: Predatory Lending in the Home Mortgage Market,* **2007 Ann. Surv. of Bankr. Law 13**.  HOEPA added "new disclosure requirements and new consumer protection restrictions on specified home mortgage loans." **Barbara J. Van Arsdale,** *Validity, Construction, and Application of Home Ownership and Equity Protection Act of 1994***, 198 A.L.R. Fed. 631 (2004)**.

**61 Consumer Fin. L.Q. Rep. at 767** (citing Tenn. Code Ann. § 45-20-102(9)). A "high cost home loan" is a "home loan in which the terms of the loan meet or exceed the rate threshold or the total points and fees threshold" set forth in the Act. **Tenn. Code Ann. § 45-20-102(8)**. Specifically excluded from the definition of "high-cost home loans" are "purchase money mortgages, open-end loans, reverse mortgages, construction loans, U.S. Department of Housing and Urban Development . . . insured loans, and Veterans Administration . . . guaranteed loans." **62 Bus. Law. 617, 628** (citing Tenn. Code Ann. 45-20-101, *et seq.*).[7]

Like other states' predatory lending laws, the Act prohibits various activities regarding high-cost home loans. *Id.* As relevant to this case, the Act generally prohibits a "lender" from: (1) making a high-cost home loan "unless the lender reasonably believes at the time the loan is made that one (1) or more of the borrowers . . . will be able to make scheduled payments to repay the obligation, Tenn. Code Ann. §45-20-103(6)(A); (2) "directly or indirectly financ[ing], in connection with any high-cost home loan, any points and fees in excess of" the maximum allowable percentage, Tenn. Code Ann. § 45-20-103(7); (3) "mak[ing] a high-cost home loan that contains a scheduled payment that is more than twice as large as the average of the earlier scheduled payments[,]" Tenn. Code Ann. § 45-20-103(10); and (4) making a high-cost home loan without giving the statutorily- required written notice to the borrower, without including notice on the face of the deed of trust and the note that the instruments relate to a high-cost home loan, and without giving separate notice of the availability of credit counseling. Tenn. Code Ann. § 45-20-103(16), (19)(A)-(B), (21).

Section 45-20-107 provides a private right of action for violations of the Act. *See* **1 Res. Mort. Lend. State Reg. Man. South Eastern Tennessee § 2:28 (updated Feb. 2013)** A lender found by a preponderance of the evidence to have violated any of the above-cited prohibitions, is subject to "liability for actual damages; for willful or intentional violations, statutory damages equal to the amount of all finance charges and fees paid by the borrowers, forfeiture of the remaining loan interest, and costs (including reasonable attorneys' fees)[.]"

---

[7]Commentators have described the Act's scope as "quite narrow[,]" noting that "it does not apply to the extent that its provisions are preempted by, are in conflict with, or are inconsistent with the National Bank Act, the Homeowner's Loan Act, the Federal Credit Union Act, 'or regulations issued by the office of the comptroller of the currency, the office of thrift supervision, the federal deposit insurance corporation or the federal credit union administration, and as interpreted by the federal courts, to national or state banks or trust companies, federal or state savings institutions, federal or state credit unions, or the operating subsidiaries of any of those.'" **61 Con. F. L. Q. R. at 765** (citing Tenn. Code Ann. § 45-20-111). Due to preemption, the Act has been described as excluding "many significant mortgage lenders in Tennessee, including national banks, state-chartered banks, credit union, and savings banks[.]" *Id.* "Other private mortgage lenders are, however, subject to the Act." *Id.* (citing Tenn. Code Ann. § 45-13-102; 24 CFR § 3500.2 (2007)).

**61 Con. F. L. Q. R. 765 at 769**; *see also* Tenn. Code Ann. § 45-20-107(a)(1).  Additionally, punitive damages may be awarded for malicious or reckless violations.  **Tenn. Code Ann. § 45-20-107(b)**.  These remedies are in addition to other remedies available to the borrower under applicable law.  **Tenn. Code Ann. § 45-20-107(d)**; 61 Con. F. Q. R. 765 at 769.

In this appeal, the parties dispute which persons the legislature intended to include within the class of "lenders," and therefore, whether the Dillinghams are "lenders" under the Act, such that they are subject to its provisions.  This is a matter of statutory interpretation, which presents a question of law.  *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012).  Accordingly, our review is de novo, with no presumption of correctness afforded to the trial court's legal conclusions.  *Id.*  As our Supreme Court has explained:

> When interpreting statutes, a reviewing court must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning.  The courts must examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning of the words used.  Furthermore, every word in a statute is presumed to have meaning and purpose.  In short, "[t]he cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end."

*U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009) (citations omitted).

The Act, in section 45-20-102(10), provides the following definition:

> "Lender" means "lender" as defined in 24 CFR 3500.2.  "Lender" also means a "mortgage loan broker" as defined in [Tennessee Code Annotated section] 45-13-10[5.][8]

24 CFR § 3500.2 provides:

> (a) Statutory terms.  All terms defined in RESPA[9] (12 U.S.C. 2602) are used

---

[8]The "Tennessee Residential Lending, Brokerage and Servicing Act" is found at Tennessee Code Annotated section 45-13-101, et seq.  The parties agree that the Dillinghams are not "mortgage loan brokers[.]"

[9]"The Real Estate Settlement Procedures Act of 1974 (RESPA) represents a response by Congress to perceived abuses in the real estate settlement process and an attempt to protect consumers from

(continued...)

in accordance with their statutory meaning unless otherwise defined in paragraph (b) of this section or elsewhere in this part.

(b) Other terms.  As used in this part:

. . . .

Lender means, generally, the secured *creditor* or *creditors* named in the debt obligation and document creating the lien.  For loans originated by a mortgage broker that closes a federally related mortgage loan in its own name in a table funding transaction, the lender is the person to whom the obligation is initially assigned at or after settlement.  A lender, in connection with dealer loans, is the lender to whom the loan is assigned, unless the dealer meets the definition of creditor as defined under "federally related mortgage loan" in this section.[10] See also § 3500.5(b)(7), secondary market transactions.

(emphasis added).

On appeal, Ms. Sparks contends that "the Act is not ambiguous and the definition of 'lender' under the Act is very plain."  According to Ms. Sparks, the Act–through its reference to 24 CFR 3500.2–establishes three categories of "lenders": (1) generally, a  lender is the secured creditor or creditors named in the debt obligation and document creating the lien; (2) in loans originated by a mortgage broker that closes a federally related mortgage loan in its own name in a table funding transaction, the lender is the person to whom the obligation is initially assigned at or after settlement; and (3) in dealer loans, the lender is the person to whom the loan is assigned.  Ms. Sparks argues that "[t]he general definition provided in the first sentence of the [24 CFR 3500.2] 'lender' definition is all that is required."  Utilizing that definition, she maintains, the Dillinghams "are clearly 'lenders' under the Act because [they]

_____

[9](...continued)
unnecessarily high settlement charges resulting from those abuses."  **Michael G. Walsh, *Construction and Application of Real Estate Settlement Procedures Act of 1974 (12 U.S.C.A. §§ 2601 et seq.)* 142 A.L.R. Fed. 511 § 2[a] (1997)**.  "[RESPA] applies to any 'federally related mortgage loan,' that is, a loan other than temporary financing such as a construction loan that is secured by a first or subordinate lien on residential property, including individual units of condominiums and cooperatives."  *Id.* (footnote omitted).  "It also applies to loans made in whole or in part by any lender with deposits or accounts that are insured by a federal agency or a lender that is regulated by the federal government."  *Id.* (footnote omitted).

[10]24 CFR § 3500.2's definition of "Dealer loan or dealer consumer credit contract" provides that "If a dealer is a 'creditor' as defined under the definition of 'federally related mortgage loan' in this part, the dealer is the lender for purposes of this part."

are listed as the secured creditor[s] under the loan in question and the deed of trust securing the loan."

In response, the Dillinghams point out that 24 CFR 3500.2's definition of "lender" references the term "creditor." They insist that "[i]n the context of RESPA,[11] it is well understood th[at] 'lender' and 'creditor' are not synonymous terms[,]" and, therefore, they maintain that, to define "lender," we must also look to the definition of "creditor" provided in 24 CFR § 3500.2. Although "creditor" is not separately defined within 24 CFR § 3500.2, 24 CFR § 3500.2's definition of "[f]ederally related mortgage loan or mortgage loan" does provide that

> ["]Federally related mortgage loan or mortgage loan["] means as follows:
> (1) Any loan (other than temporary financing, such as a construction loan):
> . . . .
> (ii) For which one of the following paragraphs applies. The loan:
> . . . .
> (D) Is made in whole or in part by a "*creditor*", as defined in section 103(g) of the Consumer Credit Protection Act (15 U.S.C. 1602(g)),[12] that makes or invests in residential real estate loans aggregating more than $1,000,000 per year. For purposes of this definition, the term "creditor" does not include any agency or instrumentality of any State[.]

---

[11]As stated above, RESPA was enacted in 1974 "to protect consumers from unnecessarily high [real estate] settlement charges" with regard to federally related mortgage loans. **Walsh,** *supra* **note 8**. "[RESPA] requires lenders, mortgage brokers, or servicers of home loans to provide borrowers with pertinent and timely disclosures regarding the nature and costs of the real estate settlement process." **FDIC Compliance Manual, V-3.1 (Dec. 2012),** *available at* http://www.fdic.gov/regulations/compliance/manual/pdf/V-3.1.pdf. "The Department of Housing and Urban Development (HUD) promulgated Regulation X (12 CFR § 1024), which implements RESPA." *Id.* (footnote omitted). "Regulation X . . . found at 24 CFR §§ 3500 et seq. . . . defines key terms found in [RESPA], such as 'federally related mortgage loan,' 'lender,' and 'creditor,' and lists transactions that are exempt from the coverage of [RESPA]." *Id.* (footnotes omitted).

[12]The Consumer Credit Protection Act defines "creditor" as

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

**15 U.S.C.A. § 1602(g)**.

**24 CFR § 3500.2(1)(I), (1)(ii)(D)** (emphasis added).

In further support of their contention that "lender" and creditor" are not synonymous terms within the RESPA context, the Dillinghams cite the FDIC Compliance Manual, which states that RESPA applies to, among other loans, federally related mortgage loans "made by a *lender* [or a] *creditor*[,]" and which provides the following definitions for such terms:

> A lender includes financial institutions either regulated by, or whose deposits or accounts are insured by any agency of the federal government.

> A creditor is defined in section 103(f) of the Consumer Credit Protection Act (15 USC § 1602(f)). RESPA covers any creditor that makes or invests in residential real estate loans aggregating more than $1,000,000 per year.

**FDIC Compliance Manual,** *supra* **note 10**. (emphasis added).

In reliance upon these definitions, the Dillinghams claim, "A 'lender' is a federal depository institution[,]"[13] and "[a] 'creditor' [is] a person who annually makes a million dollars or more in mortgage loans secured by real property improved with one to four residential units."[14] The Dillinghams claim that they are neither "lenders" nor "creditors" because, obviously, they are not a federal depository institution, and because they do not make or invest in residential real estate loans aggregating more than one million dollars per

---

[13]The Dillinghams also look to the definition of a "mortgage lender" set forth in the Tennessee Residential Lending, Brokerage and Servicing Act, Tenn. Code Ann. § 45-13-101, et seq. (2008), at the time the Tennessee Home Loan Protection Act was passed: "'Mortgage lender' means any person who in the regular course of business lends money that is secured by a mortgage." They contend that "even in looking at other definitions of 'lender' in Tennessee at the time, it is clear that the Dillinghams would still not be considered lenders" because they do not lend money in the regular course of business. We find this argument less than compelling as the Tennessee Residential Lending, Brokerage and Servicing Act currently broadly defines "mortgage lender" as "any person who makes a residential loan or holds the person out as able to make a residential mortgage loan[.]" **Tenn. Code Ann. § 45-13-105(14)**. Additionally, the Tennessee Home Loan Protection Act requires certain conduct by "servicers" of high-cost home loans, and the legislature specifically defined a "Servicer" as a "person *who in the regular course of business* assumes responsibility for servicing and accepting payment for a high-cost home loan[.]" **Tenn. Code Ann. 45-20-102(15)** (emphasis added). The legislature certainly could have included such express limiting language with regard to defining lenders had it wished to do so.

[14]The Dillinghams also argue that "the testimony of the parties" indicates that Ms. Baker viewed the Dillinghams as "investors, not lenders." The Dillinghams have not, however, asserted any estoppel-type argument, and we find irrelevant Ms. Baker's beliefs regarding whether the Dillinghams were lenders under the Act.

year.[15]

Given the statutory language utilized by the legislature, we are simply unpersuaded by the Dillinghams' arguments on appeal that the legislature intended the term "lender" under the Tennessee Home Loan Protection Act to be narrowed by RESPA to include only federal depository institutions or for the term to be subjected to the "creditor" definition set forth in the Consumer Credit Protection Act. In declining to adopt such narrow interpretations, we acknowledge that the definition of "lender" set forth in 24 CFR § 3500.2 *does* reference the term "creditor"; however, we find significant that the Tennessee Home Loan Protection Act makes no reference to the terms "creditor" or "federally related mortgage loan,"–which supplies, in part, the "creditor" definition in 24 CFR § 3500.2 cited by the Dillinghams–and that the Act only briefly cites to RESPA–with no references to RESPA made within a definitions context.[16]

The Dillinghams argue that "the Tennessee Legislature would have been aware of the distinction between ['lender' and 'creditor'] when it chose to utilize 24 CFR 3500.2 to define 'lender' under the Act" and not separately identify or define what a "creditor" is under the Act. However, rather than supporting their contention that the legislature intended to adopt "creditor" as defined by either the definition of a "[f]ederally related mortgage loan or mortgage loan" or the Consumer Credit Protection Act, we find the legislature's failure to define–or even reference–"creditor" in the Act indicates the converse: that the legislature intended to limit "lender," as used in the Act, to the three definitions of "lender" set forth in 24 CFR § 3500.2. *See U.S. Bank, N.A.*, 277 S.W.3d at 386 ("The courts must examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning of the words used."). Nothing in the Act indicates to this Court that the legislature intended "creditor," as referenced in the 24 CFR § 3500.2 general "lender" definition, to be construed as a defined term–and in any event, nothing within the Act suggests that the legislature intended to generally define a "lender" as a "creditor" as that term is used with regard to "federally related mortgage loans." Moreover, subsection (a) of 24 CFR § 3500.2 provides that RESPA definitions are to be utilized for undefined terms, and "lender" is

---

[15]Although the Tennessee Home Loan Protection Act only prohibits certain practices by "lenders," the Dillinghams seem to suggest that the Act is applicable to them if they qualify as "lenders" *or* "creditors."

[16]The Act makes two references to RESPA. It provides that a lender cannot present a borrower at closing with "materially different . . . settlement charges from the settlement charges disclosed on the last disclosures required by [RESPA] . . . without redisclosure not less than one (1) day before closing." **Tenn. Code Ann. § 45-20-103**. It also provides for certain notice to a borrower "not later than the time the good faith estimate of closing costs required by [RESPA] must be provided to the borrower. **Tenn. Code Ann. § 45-20-103**.

specifically defined within 24 CFR § 3500.2, foreclosing the Dillinghams' argument that "lender" is to be construed in accordance with RESPA to include only financial institutions. ***See*** **24 CFR § 3500.2(a)**.


Additionally, we find that adopting the definitions urged by the Dillinghams would render the Tennessee Home Loan Protection Act inconsistent and contradictory. For example, citing the first sentence of 24 CFR § 3500.2's definition of "lender," the Dillinghams ask this Court to conclude that *to be* a "lender" under 24 CFR § 3500.2–and, thus, under the Tennessee Home Loan Protection Act–one must qualify as a "creditor" pursuant to 24 CFR § 3500.2's definition of "federally related mortgage loan." Yet, the third sentence of 24 CFR § 3500.2's definition of "lender" specifically states that if a dealer, in connection with a dealer loan, qualifies as a "creditor" pursuant to 24 CFR § 3500.02's definition of "federally related mortgage loan," that the dealer is *not* a "lender." We decline to interpret 24 CFR § 3500.2–and the Act–to mean that a general lender *must be* a creditor, but that a dealer creditor *cannot* be a lender.

Moreover, we find that the Consumer Credit Protection Act's definition of "creditor" cannot supply the definition of a "lender" under 24 CFR § 3500.2–and by extension, the Act–because the Consumer Credit Protection Act defines the term "creditor" more broadly than does 24 CFR § 3500.2 under the "federally related mortgage loan" definition. As noted above, the Consumer Credit Protection Act defines "creditor" as

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

**15 U.S.C.A. § 1602(g)**. However, 24 CFR § 3500.2's "federally related mortgage loan or mortgage loan" definition specifically excludes from the term "creditor," "any agency or instrumentality of any State." Thus, it further appears that 24 CFR § 3500.2–and by extension, the Act–did not intend to simply adopt the "creditor" definition set forth in the Consumer Credit Protection Act.

In sum, we decline to adopt the Dillinghams' strained definition of "lender" pursuant to the Act. By its plain language, the Act simply references the term "lender" as used in 24 CFR § 3500.2, and the 24 CFR § 3500.2 "lender" definition contains no indication that it

-11-

must necessarily be further construed in accordance with either the definition of a "federally related mortgage loan" or with the Consumer Credit Protection Act. Bearing in mind that the legislature was free to impose such successive interpretations if it wished to do so, we find cogent the legislature's brief definition of "lender" and its limited or non-existent references to the terms and authorities urged by the Dillinghams. As relevant to this case, we conclude that a secured creditor or secured creditors named in the debt obligation and document creating the lien is a "lender" pursuant to the Tennessee Home Loan Protection Act, without regard to whether such lender qualifies as a "creditor" under the Consumer Credit Protection Act or as a "lender" under RESPA. Because the Dillinghams are listed as the secured creditors under the loan in question and the deed of trust securing the loan, we find that they are "lenders" subject to the Act, and therefore, that the trial court, having concluded otherwise, erred in granting summary judgment to the Dillinghams. The grant of summary judgment in favor of the Dillinghams is therefore reversed.

### B. Ms. Sparks' Motion for Partial Summary Judgment[17]

Based upon its conclusion that the Dillinghams were not "lenders" subject to the Act, the trial court concluded that the Dillinghams could not have violated the Act, and it granted summary judgment in their favor. The trial court did not consider whether, *if* the Dillinghams qualified as "lenders" under the Act, their conduct amounted to violations of such.

As briefly referenced above, Ms. Sparks claims that the Dillinghams violated the following provisions of the Act:

(a) **§ 45-20-103(6)(A)**
A lender may not make a high-cost home loan, unless the lender reasonably believes at the time the loan is made that one (1) or more of the borrowers, when considered individually or collectively, will be able to make scheduled payments to repay the obligation, based upon consideration of their current and expected income, current obligations, employment status, and other financial resources, other than the borrower's equity in the dwelling that secures repayment of the loan;

(b) **§ 45-20-103(7)**
No lender may directly or indirectly finance, in connection with any high-cost home loan, any points and fees in excess of an amount that is the greater of

---

[17]This case is subject to the *Hannan v. Alltel Publ'g Co.* standard of review. 270 S.W.3d 1 (Tenn. 2008).

three percent (3%) of the total loan amount or one thousand five hundred dollars ($1,500), if the total loan amount is more than thirty thousand dollars ($30,000), or an amount equal to five percent (5%) of the total loan amount, if the total loan amount is thirty thousand dollars ($30,000) or less; provided, however, that registrants under chapter 5 of this title may finance as points and fees an amount not to exceed the charges allowed pursuant to § 45-5-403(a)(1)(A) on loans made under the provisions of chapter 5 of this title;

(c) **§ 45-20-103(10)**
No lender shall make a high-cost home loan that contains a scheduled payment that is more than twice as large as the average of the earlier scheduled payments. This subdivision (10) does not apply when the payment schedule is adjusted to the seasonal or irregular income of a borrower;

(d) **§ 45-20-103(16)**
A lender shall not make a high-cost home loan unless the lender has given the following written notice, in at least twelve (12) point bold type, to the borrower, acknowledged in writing and signed by the borrower, not later than the time the notice provided by 12 CFR 226.31© is required.

NOTICE TO BORROWER

YOU SHOULD BE AWARE THAT YOU MIGHT BE ABLE TO OBTAIN A LOAN AT A LOWER COST. YOU SHOULD SHOP AROUND AND COMPARE LOAN RATES AND FEES. MORTGAGE LOAN RATES AND CLOSING COSTS AND FEES VARY BASED ON MANY FACTORS, INCLUDING YOUR PARTICULAR CREDIT AND FINANCIAL CIRCUMSTANCES, YOUR EMPLOYMENT HISTORY, THE LOAN-TO-VALUE REQUESTED AND THE TYPE OF PROPERTY THAT WILL SECURE YOUR LOAN. THE LOAN RATE AND FEES COULD ALSO VARY BASED ON WHICH LENDER OR BROKER YOU SELECT.

IF YOU ACCEPT THE TERMS OF THIS LOAN, THE LENDER WILL HAVE A MORTGAGE LIEN ON YOUR HOME. YOU COULD LOSE YOUR HOME AND ANY MONEY YOU PUT INTO IT IF YOU DO NOT MEET YOUR PAYMENT OBLIGATIONS UNDER THE LOAN.

YOU SHOULD CONSULT A QUALIFIED INDEPENDENT CREDIT COUNSELOR OR OTHER EXPERIENCED FINANCIAL ADVISOR REGARDING THE RATE, FEES AND PROVISIONS OF THIS

MORTGAGE LOAN BEFORE YOU PROCEED. THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD) MAINTAINS A LIST OF CREDIT COUNSELORS IN YOUR AREA. YOU MAY OBTAIN HUD'S LIST OF CREDIT COUNSELORS BY CONTACTING HUD DIRECTLY OR BY CONTACTING THE TENNESSEE DEPARTMENT OF FINANCIAL INSTITUTIONS.

YOU ARE NOT REQUIRED TO COMPLETE THIS LOAN AGREEMENT MERELY BECAUSE YOU HAVE RECEIVED THIS DISCLOSURE OR HAVE SIGNED A LOAN APPLICATION. REMEMBER, PROPERTY TAXES AND HOMEOWNER'S INSURANCE ARE YOUR RESPONSIBILITY. NOT ALL LENDERS PROVIDE ESCROW SERVICES FOR THESE PAYMENTS. YOU SHOULD ASK YOUR LENDER ABOUT THESE SERVICES.

ALSO, YOUR PAYMENTS ON EXISTING DEBTS CONTRIBUTE TO YOUR CREDIT RATINGS. YOU SHOULD NOT ACCEPT ANY ADVICE TO IGNORE YOUR REGULAR PAYMENTS TO YOUR EXISTING LENDERS;

(e) **§ 45-20-103(19)(A), (B)**
(A)Each mortgage or deed of trust securing a high-cost home loan shall state on the face of the instrument the following legend prominently displayed: "This instrument secures a high-cost home loan, as defined in Tennessee Code Annotated, Title 45,"; and
(B) Each note that meets the definition of a high-cost home loan as defined in this chapter shall state on the face of the instrument the following legend prominently displayed:
> "This instrument is a high-cost home loan, as defined in Tennessee Code Annotated, Title 45.";

(f) **§ 45-20-103(21)**
A lender may not make a high-cost home loan without first providing to the borrower, in a separate document clearly identified, notice of availability of counselors from third-party nonprofit organizations approved by the United States Department of Housing and Urban Development (HUD), a housing financing agency of this state, or the regulatory agency that has jurisdiction over the lender. The document shall provide either a list of counselors who are located in the county of the borrower or the nearest available county where counselors are available; or a resource list for HUD, Tennessee housing and development agency or the Tennessee department of financial institutions,

including toll-free numbers and web site information, if available, to identify the counselors. The borrower shall be afforded the opportunity to seek counseling without penalty. For purposes of this section, this document shall be provided to the borrower not later than the time that the good faith estimate of closing costs required by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., must be provided to the borrower.

In their brief to this Court, the Dillinghams acknowledge that they "previously agreed that all but one of the facts pertaining to the six (6) claimed violations were undisputed for purposes of ruling on the Motion for Summary Judgment." They apparently concede their non-compliance with the above-cited provisions, with the exception of § 45-20-103(7)–they claim that "the total points and fees in the loan at issue are exactly five percent (5%) of the total loan amount and the threshold is not exceeded." To defeat Ms. Sparks' motion for partial summary judgment, they rely solely upon their claim that they are not lenders subject to the Act.[18] However, based upon our above-determination that the Dillinghams qualify as lenders under such, we find that the trial court erred in denying Ms. Sparks' request for partial summary judgment with regard to the Dillinghams' violations of the Act–specifically subsections (6)(A), (10), (16), (19)(A), (19)(B), and (21). Accordingly, we reverse the trial court's grant of summary judgment to the Dillinghams, we grant partial summary judgment in favor of Ms. Sparks, and we remand for further proceedings consistent with this opinion, including resolution of the factually-disputed issue of whether the Dillinghams violated section 45-20-103(7).

## IV. CONCLUSION

For the aforementioned reasons, we reverse the trial court's grant of summary judgment to the Dillinghams, we grant partial summary judgment in favor of Ms. Sparks, and we remand for further proceedings consistent with this opinion, including resolution of the factually-disputed issue of whether the Dillinghams violated section 45-20-103(7). Costs of this appeal are taxed to Appellees, James Dillingham and Vickie Dillingham, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[18]Section 45-20-108 of the Act excuses non-compliance with section 45-20-103 when the lender or servicer establishes certain "good faith" circumstances. There is no indication that the Dillinghams have, at any point, asserted this exception as a defense.